ACCEPTED
15-25-00004-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
2/24/2025 11:03 PM
CHRISTOPHER A. PRINE
CLERK

*Oral Argument Requested*

No. 15-25-00004-CV

**COURT OF APPEALS**
**for the**
**FIFTEENTH DISTRICT OF TEXAS**
**Austin, Texas**

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
2/24/2025 11:03:01 PM
CHRISTOPHER A. PRINE
Clerk

**Curadev Pharma PVT. LTD. and**
**Curadev Pharma Limited,**

*Appellants,*

**v.**

**The University of Texas Southwestern Medical Center,**
**Dr. Xiaochen Bai, and Dr. Xuewu Zhang,**

*Appellees.*

**Appeal from the 101st Judicial District Court**
**of Dallas County, Texas**

**BRIEF OF APPELLEES**

43565622v.7
43565622v.9

**Nathaniel St. Clair, II**
  State Bar No. 24071564
  nstclair@jw.com
**David Schlottman**
  State Bar No. 24083807
  dschlottman@jw.com
**Demi Williams Coles**
  State Bar No. 24084101
  dcoles@jw.com
**Hailey Oestreich**
  State Bar No. 24116627
  hoestreich@jw.com
**Jackson Walker LLP**
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
Telephone: (214) 953-6000
Facsimile: (214) 661-6690

*Attorneys for Appellees The University of Texas Southwestern Medical Center, Dr. Xiaochen Bai, and Dr. Xuewu Zhang*

43565622v.7
43565622v.9

**IDENTITY OF PARTIES AND COUNSEL**

Pursuant to TEX. R. APP. P. 38.1(a), the following is a complete list of all parties to the trial court's order and the names and addresses of all counsel appearing in the trial or appellate courts:

1.     Appellants (Plaintiffs in the trial court):

Curadev Pharma PVT. LTD.
Curadev Pharma Limited

2.     Appellees (Defendants in the trial court):

The University of Texas Southwestern Medical Center
Dr. Xiaochen Bai
Dr. Xuewu Zhang

3.     Counsel for Appellants:

David P. Whittlesey (david.whittlesey@aoshearman.com)
Trey Hebert (trey.hebert@aoshearman.com)
Allen Overy Shearman Sterling US LLP
300 West 6th Street, Ste. 2250
Austin, TX 78701
Telephone: (512) 647-1900

Jacob Daniel Fields (jacob.fields@aoshearman.com)
Allen Overy Shearman Sterling US LLP
The Link at Uptown
2601 Olive St., 17th Floor
Dallas, TX 75201
Telephone: (214) 271-5777

43565622v.7
43565622v.9

4.      Counsel for Appellees:

          Nathaniel St. Clair, II (nstclair@jw.com)
          David Schlottman (dschlottman@jw.com)
          Demi Williams Coles (dcoles@jw.com)
          Hailey Oestreich (hoestreich@jw.com)
          Jackson Walker LLP
          2323 Ross Avenue, Suite 600
          Dallas, Texas 75201
          Telephone: (214) 953-6000

43565622v.7
43565622v.9

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ...............................................................i

TABLE OF CONTENTS ..................................................................... iii

STATEMENT OF THE CASE ................................................................v

STATEMENT REGARDING ORAL ARGUMENT ......................................... xiii

ISSUES PRESENTED ........................................................................xiv

STATEMENT OF FACTS....................................................................1

    A.    Curadev files its Original Petition, and Appellees respond with their original Plea to the Jurisdiction. ................................................1

    B.    Curadev files its Amended Petition in desperate search for an alleged waiver of immunity..............................................................2

    C.    Curadev's Amended Petition fails to establish a valid waiver of immunity. ...........................................................................3

    D.    The trial court grants Appellees' Plea.................................................10

    E.    Curadev files its Brief of Appellants, asserting new allegations that are not contained in the Amended Petition. ...............................10

SUMMARY OF THE ARGUMENT ........................................................13

STANDARD OF REVIEW....................................................................14

ARGUMENT ..................................................................................16

I.    The trial court correctly granted Appellees' Plea because Curadev failed to affirmatively establish the trial court's jurisdiction. ......................16

    A.    UT Southwestern is an agency of the State of Texas protected by sovereign immunity..............................................................16

    B.    Sovereign immunity bars Curadev's takings claim because Curadev failed to plead a cognizable claim so as to fall within the waiver. ..................................................................................17

        1.    Curadev did not plead that UT Southwestern "took" Curadev's supposed trade secret with the requisite intent.......19

43565622v.7
43565622v.9

2.    *Self* confirms the intent analysis is relevant.............................26

3.    Curadev cannot cogently articulate a vested property right that was taken; its attempt to vacillate between the trade secrets that underpin its takings theory fails...................29

4.    Curadev has failed to show any basis in law to support its takings theory. .........................................................................36

C.    Cuardev failed to demonstrate a waiver of sovereign immunity for its conversion claim. ..................................................................40

D.    Curadev has not established that the Legislature clearly and unambiguously waived sovereign immunity for claims of trade secret misappropriation. ...................................................................41

E.    Texas law rejects supposed common-law bases for waiver of sovereign immunity. .........................................................................42

1.    Texas courts consistently refuse to recognize a waiver-by-conduct exception. ............................................................42

2.    The joint enterprise theory is not an independent basis for waiver of immunity. ...............................................................45

F.    The Texas Tort Claims Act election-of-remedies provision mandates dismissal of the Professors. ...............................................50

1.    Curadev cannot plead around its irrevocable election to sue both UT Southwestern and its employees. .........................56

G.    Curadev fails to allege a viable *ultra vires* claim..............................60

H.    The Associate Judge properly heard Appellees' plea, and Appellants did not timely object or seek de novo review from the District Court. ..........................................................................64

PRAYER .......................................................................................................67

CERTIFICATE OF COMPLIANCE...................................................................68

Appendix:

    Order Granting Defendants' Plea to the Jurisdiction (CR.1231-32).........tab 1

43565622v.7
43565622v.9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Banik v. Thompson*,
No. 7:16-CV-00462, 2018 WL 11469644 (S.D. Tex. Jan. 3, 2018) ...................6

*Blackburn v. Columbia Med. Ctr. of Arlington Subsidiary, L.P.*,
58 S.W.3d 263 (Tex. App.—Fort Worth 2001, pet. denied) .............................49

*Brown & Gay Eng'g, Inc. v. Olivares*,
461 S.W.3d 117 (Tex. 2015) .............................................................................40

*Brownlow v. State*,
251 S.W.3d 756 (Tex. App.—Hous. [14th Dist.] 2008) .............................28, 29

*Carter v. Diamond URS Huntsville, LLC*,
No. CIV.A. H-14-2776, 2015 WL 3629793 (S.D. Tex. June 10,
2015) .................................................................................................................60

*City of Beaumont v. Bouillion*,
896 S.W.2d 143 (Tex. 1995) ............................................................................36

*City of Corpus Christi v. Eby*,
No. 13-09-00205-CV, 2011 WL 1437002 (Tex. App.—Corpus
Christi Apr. 14, 2011, no pet.) ...............................................................56, 57, 58

*City of El Paso v. Heinrich*,
284 S.W.3d 366 (Tex. 2009) ............................................................................51

*City of Elsa v. M.A.L.*,
226 S.W.3d 390 (Tex. 2007) ............................................................................36

*City of Hous. v. Rhule*,
417 S.W.3d 440 (Tex. 2013) ...............................................................62, 63, 66

*City of Houston v. Houston Mun. Employees Pension Sys.*,
549 S.W.3d 566 (Tex. 2018) ...............................................................61, 62, 63

*City of Ingleside v. City of Corpus Christi*,
469 S.W.3d 589 (Tex. 2015) ............................................................................14

43565622v.7
43565622v.9

*City of McKinney v. Hank's Rest. Grp., L.P.*,
412 S.W.3d 102 (Tex. App.—Dallas 2013, no pet.) ............................................44

*City of San Antonio v. El Dorado Amusement Co.*,
195 S.W.3d 238 (Tex. App.—San Antonio 2006, pet. denied)...........................25

*City of San Antonio v. Polanco & Co., L.L.C.*,
No. 04-07-00258-CV, 2007 WL 3171360 (Tex. App.—San
Antonio, Oct. 31, 2007) .......................................................21, 22, 25, 26

*City of San Antonio v. Winkenhower*,
875 S.W.2d 388 (Tex. App.—San Antonio 1994, writ denied) .........................41

*Dallas City Cmty. College Dist. v. Clear Channel Outdoor, Inc.*,
No. 05-07-00701-CV, 2008 WL 3307085 (Tex. App.—Dallas July
31, 2008, pet. denied)........................................................................21

*Dallas Cnty. Appraisal Dist. v. Funds Recovery, Inc.*,
887 S.W.2d 465 (Tex. App—Dallas 1994) .......................................................14

*Doe v. City of Fort Worth*,
646 S.W.3d 889 (Tex. App.—Fort Worth 2022, no pet.)............................48, 50

*Fraley v. Tex. A&M Univ. Sys.*,
664 S.W.3d 91 (Tex. 2023)...............................................................14, 15

*Franka v. Velasquez*,
332 S.W.3d 367 (Tex. 2011) ...........................................................................53

*Freiberg v. Magale*,
7 S.W. 684 (Tex. 1888)...................................................................................32

*Gen. Servs. Comm'n v. Little-Tex Insulation Co., Inc.*,
39 S.W.3d 591 (Tex. 2001).............................................................21, 22, 25, 26

*Gentilello v. Univ. of Tex. Sw. Health Sys.*,
No. 05-13-00149-CV, 2014 WL 1225160 (Tex. App.—Dallas Mar.
24, 2014, pet. denied)..............................................................................16, 44

*Hall v. McRaven*,
508 S.W.3d 232 (Tex. 2017) ...........................................................................61

43565622v.7
43565622v.9

*Hallco Tex., Inc. v. McMullen Cnty.*,
221 S.W.3d 50 (Tex. 2006)................................................................18, 21, 24, 31

*Hearts Bluff Game Ranch, Inc. v. State*,
381 S.W.3d 468 (Tex. 2012) ...........................................................17, 28, 35, 43

*Hillman v. Nueces Cty.*,
579 S.W.3d 354 (Tex. 2019) ...................................................................15, 38

*Hoffman v. Moore*,
No. 13-18-00617-CV, 2020 Tex. App. LEXIS 3405 (Tex. App.—
Corpus Christi Apr. 23, 2020, no pet.) ..............................................................40

*Honors Academy, Inc. v. Tex. Educ. Agency*,
555 S.W.3d 54 (Tex. 2018)................................................................................62

*Jim Olive Photography v. Univ. of Houston Sys.*,
624 S.W.3d 764 (Tex. 2021) ....................................................................*passim*

*Johnson v. Boehnke*,
No. 03-19-00200-CV, 2019 WL 4458797 (Tex. App.—Austin
Sept. 18, 2019, no pet.) .....................................................................................53

*JRJ Pusok Holdings, LLC v. State, No. 14-22-00559-CV*,
*2023 WL 8939318* (Tex. App.—Houston [14th Dist.] Dec. 28,
2023) ..................................................................................................................62

*Kirk v. Plano Indep. Sch. Dist.*,
No. 03-15-00211-CV, 2016 WL 462742 (Tex. App.—Austin Feb.
3, 2016, no pet.) .................................................................................................60

*Machete's Chop Shop, Inc. v. Tex. Film Commission*,
483 S.W.3d 272 (Tex. App.—Austin 2016).......................................14, 17, 35

*Mayhew v. Town of Sunnyvale*,
964 S.W.2d 922 (Tex. 1998) .............................................................................18

*Mbogo v. City of Dallas*,
No. 05-17-00879, 2018 WL 3198398 (Tex. App.—Dallas June 29,
2018, pet. denied)...............................................................................................18

*MBP Corp. v. Bd. of Trustees of Galveston Wharves*,
297 S.W.3d 483 (Tex. App.—Houston [14th Dist.] 2009, no pet.) .22, 25, 26, 27

43565622v.7
43565622v.9

*Mission Consol. Indep. Sch. Dist. v. Garcia*,
253 S.W.3d 653 (Tex. 2008) ..................................................................*passim*

*Molina v. Alvarado*,
463 S.W.3d 867 (Tex. 2015) ...........................................................................59

*Motiva Enters., LLC v. McCrabb*,
248 S.W.3d 211 (Tex. App.—Houston [1st Dist.] 2007, pet.
denied)...............................................................................................................25

*Nkansah v. Univ. of Tex. at Arlington*,
No. 02-10-00322-CV, 2011 Tex. App. LEXIS 8208 (Tex. App.—
Fort Worth Oct. 13, 2011, pet. denied)............................................................40

*Nueces Cnty. v. Ferguson*,
97 S.W.3d 205 (Tex. App.—Corpus Christi 2002, no pet.) ........................50, 51

*Oncor Elec. Delivery Co. NTU, LLC v. Wilbarger Cnty. Appraisal
Dist.*,
691 S.W.3d 890 (Tex. 2024) ...........................................................................43

*Retzlaff v. Tex. Dep't of Crim. Justice*,
135 S.W.3d 731 (Tex. App.—Houston [1st Dist.] 2003, no pet.)......................41

*Scott v. Huntsville Indep. Sch. Dist.*,
487 S.W.2d 692 (Tex. 1972) ...........................................................................25

*Seureau v. ExxonMobil Corp.*,
274 S.W.3d 206 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ..................48

*Sharyland Water Supply Corp. v. City of Alton*,
354 S.W.3d 407 (Tex. 2011) ...........................................................................43

*State v. Hale*,
146 S.W.2d 731 (1941)....................................................................................18

*State v. Holland*,
221 S.W.3d at 639................................................................................*passim*

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998) ..................................66

43565622v.7
43565622v.9

*Tex. A & M Univ. Sys. v. Koseoglu*,
233 S.W.3d 835 (Tex. 2007) ....................................................44

*Tex. Dep't of Family & Protective Services v. E.R.*,
No. 13-07-00390-CV, 2009 WL 401622 (Tex. App.—Corpus
Christi Feb. 19, 2009, no pet.) ..............................................36

*Tex. Dep't of Parks & Wildlife v. Miranda*,
133 S.W.3d 217 (Tex. 2004) ...................................................15

*Tex. Dep't of Transp. v. Able*,
35 S.W.3d 608 (Tex. 2000)...............................................46, 47, 48, 49

*Tex. Dep't of Transp. v. Olivares*,
316 S.W.3d 89 (Tex. App.—Houston [14th Dist.] 2010, no pet.) .....................48

*Tex. Dep't of Transp. v. Self*,
690 S.W.3d 12 (Tex. 2024)...............................................26, 27

*Tex. Highway Dep't v. Weber*,
147 Tex. 628, 219 S.W.2d 70 (1949) ........................................63

*Tex. Nat. Res. Conservation Comm'n v. IT-Davy*,
74 S.W.3d 849 (Tex. 2002)....................................................43

*Tex. S. Univ. v. State St. Bank & Tr. Co.*,
212 S.W.3d 893 (Tex. App.—Houston [1st Dist.] 2007, pet.
denied)...............................................................30, 35

*Tex. Tech Univ. Sys. v. Martinez*,
691 S.W.3d 415 (Tex. 2024) (Young, J., dissenting) ...........................32

*Texas Bay Cherry Hill, L.P. v. City of Fort Worth*,
257 S.W.3d 379 (Tex. App.—Fort Worth 2008, no pet.)
...............................................................56, 57, 58

*TXU Energy Retail Co. L.L.C. v. Fort Bend Indep. Sch. Dist.*,
472 S.W.3d 462 (Tex. App.—Dallas 2015, no pet.) ...........................44

*Univ. of Hous. v. Barth*,
403 S.W.3d 851 (Tex. 2013) ...................................................6

43565622v.7
43565622v.9

*Univ. of N. Tex. v. City of Denton*,
   348 S.W.3d 44 (Tex. App.—Fort Worth 2011, no pet.) .....................................44

*Univ. of Tex. Health Sci. Ctr. of Hous. v. Rios*,
   542 S.W.3d 530 (Tex. 2017) ..............................................................................59

*Univ. of Tex. Med. Branch v. York*,
   871 S.W.2d 175 (Tex. 1994) ..............................................................................40

*Univ. of Tex. Sw. Med. Ctr. at Dallas v. Estate of Arancibia ex rel.*
   *Vasquez-Arancibi*a,
   324 S.W.3d 544 (Tex. 2010) .........................................................................15, 16

*Vanda Pharmaceuticals, Inc. v. United States*,
   174 Fed. Cl. 513 (Fed. Cl. 2025) ...................................................................38, 39

*Williams v. Valdez*,
   No. 05-18-00213-CV, 2020 WL 2897181 (Tex. App.—Dallas June
   3, 2020, no pet.) ................................................................................................63

*Zellers v. Cortez*,
   No. 13-09-00596-CV, 2010 WL 1839280 (Tex. App.—Corpus
   Christi May 6, 2010, no pet.) .............................................................................51

**Statutes**

Code § 101.106 .....................................................................................*passim*

TEX. CIV. PRAC. & REM. CODE § 101.021(2) ........................................................47

TEX. CIV. PRAC. & REM. CODE § 101.106(a) ........................................................54

TEX. CIV. PRAC. & REM. CODE § 101.106(e) ...................................................*passim*

TEX. CIV. PRAC. & REM. CODE § 101.106(f) ........................................................55

TEX. CIV. PRAC. & REM. CODE § 134A.002(6) .....................................................30

TEX. EDUC. CODE § 61.003(5) ..............................................................................16

TEX. EDUC. CODE § 61.003(8) ..............................................................................16

TEX. EDUC. CODE § 74.101 *et seq.* .......................................................................16

TEX. GOV'T CODE § 54.116A..................................................................66

TEX. GOV'T CODE § 54A.106...........................................................64, 65

TEX. GOV'T CODE § 54A.115..................................................................65

TEX. GOV'T CODE §§ 572.002(10)(B) .....................................................16

Tex. Gov't Code § 2260.001 *et seq.* And ...............................................24

section 61.003 of the Texas Education Code...........................................16

Texas Tort Claims Act ...................................................................*passim*

Texas Tort Claims Act ............................................................................51

Texas Uniform Trade Secrets Act...........................................................41

Tort Claims Act..........................................................................46, 47, 51

TTCA .............................................................................................*passim*

TUTSA ....................................................................................................42

## Other Authorities

Fifth Amendment ....................................................................................39

Rule 90101 § 2 ..........................................................................................6

Tex. R. Civ. P. 59....................................................................................32

Texas Constitution ......................................................................17, 21, 31

Article I, Section 17 of the Texas Constitution .................................25, 31

43565622v.7
43565622v.9

## STATEMENT OF THE CASE

*Nature of the Case:* This is an appeal from the trial court's order granting a plea to the jurisdiction by The University of Texas Southwestern Medical Center ("UT Southwestern"), Dr. Xiaochen Bai ("Bai"), and Dr. Xuewu Zhang ("Zhang" and together with UT Southwestern and Bai, "Appellees"). (CR.1231-32 [App. 1]) In the underlying lawsuit, Curadev Pharma PVT. LTD. and Curadev Pharma Limited (collectively, "Curadev") asserted claims for misappropriation of trade secrets, conversion, and inverse condemnation against Appellees. (CR.6-25)

*Course of Proceedings:* On March 12, 2024, Curadev filed its Original Petition against UT Southwestern. (CR.6) On May 9, 2024, Appellees filed their original Plea to the Jurisdiction and Motion to Dismiss seeking dismissal of all of Curadev's claims (the "Original Plea"). (CR.1114-43) The Original Plea asserted, among other things, that sovereign immunity barred all of Curadev's claims against Appellees and that the Professors must be immediately dismissed pursuant to the election-of-remedies provision in the Texas Tort Claims Act. (*Id.*)

On June 11, 2024, Curadev filed an Amended Petition. (CR.540-64) On July 30, 2024, Appellees filed a new Plea to the Jurisdiction addressing the allegations in the Amended Petition (the "Plea"). (CR.1076-97)

*Trial Court's Disposition:* On December 16, 2024, the trial court (the Honorable Rachel Craig, Associate Judge, presiding) signed an order granting Appellees' Plea to the Jurisdiction. (CR.1231-32 [App. 1])

43565622v.7
43565622v.9

**STATEMENT REGARDING ORAL ARGUMENT**

Appellees respectfully request oral argument. This appeal arises from the proper grant of Appellees' plea to the jurisdiction seeking dismissal of Curadev's claims because they are barred by sovereign immunity. Though Curadev skirts around the issue, Curadev is asking this Court to take up the novel issue of whether supposed misuse of a vague, unidentified "trade secret" can constitute a constitutional taking. Because the Amended Petition fails to clearly identify what property was allegedly taken or how the supposed taking occurred, Appellees believe oral argument will materially assist the Court in determining these matters, as they are not clear from Curadev's pleadings alone.

43565622v.7
43565622v.9

## ISSUES PRESENTED

1. Did the trial court properly dismiss Curadev's claims against UT Southwestern for lack of subject matter jurisdiction when:

    a. UT Southwestern is an agency of the State of Texas protected by sovereign immunity;

    b. the Legislature has not waived sovereign immunity for the intentional torts of conversion and trade secret misappropriation;

    c. The entire dispute traces back to Appellees' alleged contractual transgressions;

    d. Curadev cannot convert their tort claims into a takings claim, because they fail to identify any vested intellectual property interest or right or how it was allegedly taken;

    e. Texas courts consistently reject a waiver-by-conduct exception to sovereign immunity, and the Texas Supreme Court has recognized none; and

    f. the joint enterprise theory is not an independent basis for waiver of sovereign immunity?

2. Did the trial court properly dismiss Curadev's claims against the Professors pursuant to the TTCA's election-of-remedies provision, Texas Civil Practices and Remedies Code § 101.106, when:

43565622v.7
43565622v.9

a. the Texas Supreme Court has held that "the [TTCA's] election scheme governs all suits against a governmental unit";

b. Curadev's Original Petition asserted claims against the Professors based on conduct within the scope of their employment with UT Southwestern; and

c. UT Southwestern filed the Original Plea seeking dismissal of the Professors pursuant to the TTCA's election-of-remedies provision?

43565622v.7
43565622v.9

Despite bearing the burden to identify specific allegations that affirmatively establish a basis for waiver of immunity, Curadev's Statement of Facts does not contain *a single* citation to the record. The reason is simple: even when read in a light most favorable to Curadev, the Amended Petition does not allege a cognizable takings claim or otherwise state a valid basis of wavier of sovereign immunity—a conclusion that is only reinforced by the undisputed evidence Curadev attached to its live pleading. Rather than focusing on its pleadings, or articulating a cogent theory as to what exactly was taken or how, Curadev attempts to inject new facts into the record through its briefing. To be clear, Curadev's attempt to revive its claims through briefing and obfuscation ignores what is germane to the issues raised in this appeal: whether Curadev met its burden to allege adequate facts to affirmatively demonstrate the court's jurisdiction to hear this case.

A.    **Curadev files its Original Petition, and Appellees respond with their original Plea to the Jurisdiction.**

On March 12, 2024, Curadev filed its Original Petition against UT Southwestern, an institution of higher education established and operated by the State of Texas, and two UT Southwestern academic researchers, Bai and Zhang (collectively, the "Professors"). (CR.6) The Original Petition asserted claims against UT Southwestern and the Professors for alleged misappropriation of vaguely hypothesized trade secrets and conversion of the same. (CR.20-22) Curadev also

1

asserted an afterthought constitutional takings claim against UT Southwestern. (CR.21-22) Notably, the Original Petition did not acknowledge that UT Southwestern was a governmental unit nor plead any alleged basis for waiver of UT Southwestern's sovereign immunity. (CR.6-25)

As all of the intentional torts conjured by Curadev are clearly barred by sovereign immunity, on May 9, 2024, Appellees filed their original Plea to the Jurisdiction and Motion to Dismiss seeking dismissal of all of Curadev's claims (the "Original Plea"). (CR.1114-43) The Original Plea asserted, among other things, that sovereign immunity barred all of Curadev's claims against Appellees and that the Professors must be immediately dismissed pursuant to the election-of-remedies provision in the Texas Tort Claims Act. *Id*. Appellees set the Original Plea for hearing on June 18, 2024.

### B.   Curadev files its Amended Petition in desperate search for an alleged waiver of immunity.

On June 11, 2024, one week before the hearing on Appellees' Original Plea, Curadev filed an Amended Petition asserting the same three plainly barred claims,[1] but added new allegations that attempted to establish grounds for waiver of sovereign immunity. (CR.540-64)

---

[1] The Amended Petition includes seven "Counts" but Counts IV through VII are not actually claims for relief. They are boilerplate recitations of various theories intended to circumvent sovereign immunity, as well as attempt to avoid clear limitations issues. (*See* CR.559-61)

43565622v.7
43565622v.9

Concurrently with the Amended Petition, Curadev filed a Response in Opposition to Appellees' Original Plea (the "Response") that relied on Curadev's new allegations in the Amended Petition.

### C. Curadev's Amended Petition fails to establish a valid waiver of immunity.

According to Curadev's pleadings, Curadev is a foreign biotech company "investigating, among others, small molecule agonists of human Stimulator of Interferon Genes ('STING') for the treatment of cancer." (CR.540) At some time before 2019, Curadev developed a STING agonist that it hoped would bind to the STING protein. (CR.544, ¶ 14 ("Curadev designed and developed several potent small molecule human STING agonists which were allosteric human STING agonists that likely bound to a unique site in what is known as the "transmembrane region" of the STING protein."), CR.545, ¶ 18 ("The access and use of Curadev's STING agonist was contractually limited to specific research within the scope of a defined project for Takeda, which limited the work that Defendants Bai and Zhang performed to a 'structural analyses of some compounds that may bind the transmembrane region of STING.'")) Curadev licensed a certain STING agonist to a third-party not involved in these proceedings—a wholly-owned subsidiary of Takeda Pharmaceutical Co. Ltd., ("Takeda")— "for further development." (CR.544, ¶ 15)

43565622v.7
43565622v.9

In March 2019, the Professors "published a structure of full-length STING . . . which included the transmembrane portion of the STING protein." (CR.544-45, ¶ 16) The Professors made this discovery on their own, prior to any involvement with Takeda or Curadev, by using cryo-electron microscopy, which is "one of the methods that can be used to confirm whether a particular STING agonist is allosteric." (*Id.*)

Due to the Professors' discovery, in September 2019, Takeda and UT Southwestern entered into a Sponsored Collaboration Research Agreement (the "Research Agreement"). (CR.545, ¶ 17) As the Amended Petition makes clear, all of Curadev's claims, such as they are, relate back to materials and information given to Appellees under that contract, and the limits of the publication and intellectual property ("IP") rights granted Appellees therein. *See*, *e.g.* (CR.546-51)

The Research Agreement—which was attached to the Amended Petition— provided that the purpose of the research project was for UT Southwestern and Takeda to collaborate on the structural analysis of a Takeda-provided compound that "may bind to the transmembrane region of STING":

> We have recently solved the structures of full-length STING in both the inactive and active states, providing a clear understanding of the regulatory mechanisms of STING. These structures also provide a solid foundation for developing and detailed analyses of compounds that target STING. In light of these findings, Takeda California, Inc reached out to us to initiate a collaboration on structural analyses of some compounds that may bind the transmembrane region of STING. The current plan of this collaboration is to first test the direct interaction between full-length STING and the compounds, and then determine the structures of the STING/compound complexes. These studies will both deepen our understanding of the mechanisms in STING and help optimize the compounds as potential therapeutic agents.

(CR.674) (emphasis added). The Research Agreement makes no mention of Curadev, and recognized that while Takeda was providing a compound to the

4

43565622v.7
43565622v.9

research project, UT Southwestern was providing "purified STING proteins" to the project. (CR.666-67)

The Research Agreement permitted UT Southwestern "to present or publish at their own choosing, methods and results of the Research Program under this Agreement." (CR.668) It also explicitly contemplated that UT Southwestern would publish "Confidential Information" with Takeda's consent or if they failed to object within 60 days. (*Id.*)

This next point cannot be overstated: The Research Agreement further contemplated UT Southwestern would generate IP from its research, and that any discovery made jointly by UT Southwestern and Takeda during the research program would "reside jointly" between UT Southwestern and Takeda:

> 10.2    For Purposes of this Agreement, an "**Invention (s)**" is any invention or discovery, whether patentable or non-patentable, that is first conceived or reduced to practice in the course of performance of the Research Program under this Agreement. Title to all Inventions made solely by UT Southwestern inventors and without use of or reliance upon Company Material, shall reside in UT Southwestern; title to all Inventions made solely by Company inventors and without use of or reliance upon UT Southwestern Material, shall reside in Company; title to all Inventions made jointly by UT Southwestern and Company inventors shall reside jointly in UT Southwestern and Company. The Parties shall promptly make full disclosure in confidence, upon becoming aware, to each other of all Inventions. Inventorship of all Inventions will be determined in accordance with United States patent law. Ownership of all Inventions will follow inventorship. Company and UT Southwestern shall conclude in good faith a separate agreement concerning the use, patenting and commercialization of joint Inventions.

(CR.669) (emphasis added) The contract is silent as to Inventions generated by UT Southwestern independently of Takeda but utilizing Company Material. (*See id.*)

With respect to Inventions, the Research Agreement grants Takeda a six-month option to try and negotiate a license to exploit the IP. (*Id.*). If the option goes

43565622v.7
43565622v.9

unexercised or six months expires, "such inventions and discoveries shall be disposed of in accordance with UT Southwestern policies, with no obligation to Company." (*Id.*) Thus, by operation of the Research Agreement and State law, all IP generated by Appellees under the study was property of the Board of Regents of The University of Texas System, and after six months, was freely exploitable without limitation. *See* University of Texas Regents' Rule 90101 § 2 (establishing that the Board of Regents owns intellectual property generated by University employees in the course of their employment, utilizing State funds, or utilizing University resources).[2]

"In April 2020, Curadev and Takeda terminated their relationship." (CR.546, ¶ 22) The Amended Petition does not allege that the termination was communicated to UT Southwestern. (*See generally* CR.540-64) In any event, by its terms, the Research Agreement lasted at least through September 2, 2021. (CR.665) And it was only terminable prior to that date "by the written agreement" of UT Southwestern and Takeda. (CR.671)

In October or November 2020, Curadev learned that the Professors "generated data showing that Curadev's test compound ***indeed bound*** to a unique allosteric

---

[2] Regents' rules carry the force of Texas law. *See Univ. of Hous. v. Barth*, 403 S.W.3d 851, 855 (Tex. 2013) ("[W]e have held that rules enacted by the University of Texas's Board of Regents . . . are of the same force as would be a like enactment of the Legislature"); *Banik v. Thompson*, No. 7:16-CV-00462, 2018 WL 11469644, at *7 n.100 (S.D. Tex. Jan. 3, 2018) ("The Regents' Rules constitute state law, and thus the Court does not need to take judicial notice of them any more than it needs to take judicial notice of Texas statutes or common law").

43565622v.7
43565622v.9

transmembrane site on STING." (CR.547, ¶ 24) (emphasis added) As the Amended Petition acknowledges, "[a]t that time, [Appellees] were not aware that Curadev was the inventor of the test compound or of the chemical structure of the test compound." (*Id.*)

In November 2020, Curadev revealed that it was the inventor of the test compound, and requested the test compound's chemical structure, but Curadev did not provide the compound's chemical structure to Appellees. (CR.547, ¶ 25) ("Bai and Zhang revealed to Curadev *their* finding which confirmed that the test compound indeed binds an allosteric site, and requested the chemical structure of the test compound for a publication.") (emphasis added) To reiterate: the Amended Petition concedes that Appellees had no idea Curadev even created the test compound until Curadev, outside of any contractual relationship with UT Southwestern, voluntarily disclosed that information to UT Southwestern at a virtual meeting in November 2020.  (CR.547, ¶ 24)

In other words, according to the Amended Petition, the Professors had already made their discovery at that point, without any idea "that Curadev was the inventor of the test compound" or any knowledge of "the chemical structure of the test compound."  (*Id.*)Those "results," so the Amended Petition says, "had been obtained solely due to [Appellees'] work on Curadev's compound under the now terminated agreement with Takeda."  (CR.547,  ¶ 25)

7

In August 2021, Appellees allegedly "submitted a manuscript to *Nature* for publication describing how" a different, publicly available compound bound to an allosteric binding site. (CR.548, ¶ 29) There is no allegation that Takeda objected to this publication.

In July 2021, Curadev informed the Professors that, since Curadev had been granted patents in certain territories, "Curadev was ready to discuss a joint publication of [the results] of *[Appellees'] research*." (CR.547, ¶ 26)

In January 2022, without any alleged objection from Takeda and long after any option on Takeda's behalf would have expired anyway, Appellees submitted a patent application, apparently based in part on what they learned during the study. (CR.551, ¶ 38)

In April 2022, the Professors' previously submitted manuscript describing their research on an entirely different—*and publicly disclosed*—compound, C53, was published. (CR.548, ¶¶ 29-30) The manuscript detailed how the C53 compound, a STING agonist, bound to a unique allosteric binding site on the STING protein. (CR.548, ¶ 29)

Curadev claims that the C53 compound "is structurally related to the Curadev test compound provided to UTSW by Takeda." (CR.548, ¶ 30) But notably, Curadev never alleges that its "secret" test compound has been disclosed, such that a disclosure of the test compound could ever constitute a taking. (*See generally* Am.

43565622v.7
43565622v.9

Pet.) Indeed, Curadev admits that the Professors were never provided the test compound's chemical structure. (CR.547, ¶ 25)

Rather, the takings theory pled in the Amended Petition—strained as it is—is that the Professors somehow misused their contractual access to or knowledge of vaguely defined confidential information to make their own discovery and then disclosed their own research on a publicly available compound. (CR.547-49) More specifically, "[t]he access and use of Curadev's STING agonist was contractually limited to the specific research within the scope of a defined project for Takeda," (CR.545, ¶ 18), and after "the Curadev/Takeda relationship ended," Appellees allegedly "failed to cease their investigation of Curadev's test compound." (CR.546, ¶ 23) "[O]nly by using their access to confidential, trade secret information from Curadev" under the Research Agreement, so the Amended Petition says, "could Defendants have specifically targeted Curadev's publications on its STING agonists over" other compounds "available in the literature at the same time" to continue their work. (CR.549, ¶ 34)

The fruit of the poisonous tree imagined by the Amended Petition appears to be "information that they [the Professors themselves] derived when they were provided with the test compound" under the Research Agreement, resulting in the *Nature* publication and subsequent patent application. (CR.551-52, ¶ 40)

43565622v.7
43565622v.9

Even though it took less than a year for the Professors to independently make that discovery without any idea who Curadev was, the Amended Petition, in contradiction to the foregoing admission, asserts that the Professors "were able to capitalize on their work years in advance of when they would have otherwise independently developed such knowledge." *Id.*[3]

### D. The trial court grants Appellees' Plea.

On July 30, 2024, Appellees filed a new Plea to the Jurisdiction addressing the allegations in the Amended Petition (the "Plea"). (CR.1076-97) Following briefing by the parties and a December 2024 hearing, the trial court signed an order granting Appellees' Plea. (CR.1231-32 [App. 1]) Curadev subsequently filed a Notice of Appeal to challenge the trial court's order. (CR.1233-35)

### E. Curadev files its Brief of Appellants, asserting new allegations that are not contained in the Amended Petition.

Because there is no dispute that Appellees did not disclose Curadev's "secret" compound, Curadev tries to shift course and focus on Appellees supposed "misuse" of Curadev's alleged trade secrets. But after realizing that the Amended Petition did

---

[3] Here again, the Amended Petition stumbles over itself. In March 2019, before any of this began, the Professor allegedly published the "structure of full-length STING," including "the transmembrane portion." (CR.544-45, ¶ 16) Based on that discovery, **Takeda sought out** the Professors and UT Southwestern to collaborate, and Taekda provided the secret compound to UT Southwestern under the terms of the Research Agreement in September 2019. (CR.545, ¶ 17) Sometime between September 2019 and November 2020, likely less than a year of actual study, the Professors had already independently made the discovery that the "test compound indeed bound to a unique allosteric transmembrane site on STING"—without any idea who Curadev was or the identity of the compound. (CR.547, ¶ 25) Curadev's "years" theory is nonsensical.

43565622v.7
43565622v.9

not plead that Curadev had a valid property interest in ***the Appellees' discovery*** (*i.e.*, that a STING agonist bound to a unique site in the transmembrane region of the STING protein), Curadev now attempts to revise its claims through its briefing with allegations that were ***not*** included in the Amended Petition. A chart showing the relevant factual discrepancies between the Amended Petition and Brief of Appellants is below:

| Brief of Appellants | Amended Petition |
|---|---|
| "Through several years and more than $12 million in research and testing, Curadev designed and developed several such agonists ***that were able to bind*** to a unique allosteric site in what is known as the 'transmembrane region' of the STING protein." <br><br> (App't Br. at 1) | "Through this effort, Curadev designed and developed several potent small molecule human STING agonists which were allosteric human STING agonists ***that likely bound*** to a unique site in what is known as the 'transmembrane region' of the STING protein." <br><br> (CR.544, ¶ 14) |
| "***Curadev has an ownership interest in any intellectual property that was developed using Curadev's test compound and trade secrets***, and entitled [*sic*] to maintain such intellectual property as a trade secret." <br><br> (App't Br. at 12) | "For Purposes of this Agreement [between UT Southwestern and Takeda], an 'Invention(s)' is any invention or discovery, whether patentable or non-patentable, that is first conceived or reduced to practice in the course of performance of the Research Program under this Agreement. . . . ***title to all Inventions made jointly by UT Southwestern and [Takeda] inventors shall reside jointly in UT Southwestern and [Takeda]***." <br><br> (CR.669) |

The Amended Petition, as distinct from Appellants' wishful Brief, clearly shows that Curadev only had a ***hypothesis*** that the "secret" compound would bind to the

43565622v.7
43565622v.9

transmembrane region of the STING protein, but it was the Appellees that *actually made* the discovery. The Research Agreement attached to the Amended Petition (and Texas law) further makes clear that Appellees, not Curadev, had a valid property interest in their discovery. (CR.669)

43565622v.7
43565622v.9

## SUMMARY OF THE ARGUMENT

This dispute is, at its core and in its original iteration, about an alleged breach of contract that resulted in a purported misappropriation of "trade secrets" under Texas tort law. The parties of course disagree on the merits of those contentions, but that is ultimately a moot point. When Appellees pointed out below that Appellants' assorted claims are all barred *ab initio* by the doctrine of sovereign immunity, Appellants scrambled to breathe life into the broken pieces of their dead-on-arrival Petition. Unfortunately for them, their facts do not fit the claims to which they retreated—a square peg, in a round hole. The resulting Amended Petition is, as the trial court recognized, an incoherent mishmash of ad hoc or debunked legal theories and vague factual recitations that cannot support a claim, and reflects the simple reality that this case never was, and never has been, viable against the State.

In granting Appellees' Plea to the Jurisdiction, the trial court correctly concluded that Appellants' claims were precluded by sovereign immunity and the TTCA's elections-of-remedies provision. The trial court's order should be affirmed.

43565622v.7
43565622v.9

Appellants, as the parties seeking judicial relief, "bear[] the burden of affirmatively demonstrating the trial court's jurisdiction" at all times. *City of Ingleside v. City of Corpus Christi*, 469 S.W.3d 589, 590 (Tex. 2015). Whether a plaintiff meets its burden of establishing the trial court's jurisdiction is a question of law that an appellate court reviews de novo. *Machete's Chop Shop, Inc. v. Tex. Film Commission*, 483 S.W.3d 272, 278 (Tex. App.—Austin 2016). "If the trial court lacked jurisdiction, then an appellate court only has jurisdiction to set the judgment aside and dismiss the cause." *Dallas Cnty. Appraisal Dist. v. Funds Recovery, Inc.*, 887 S.W.2d 465, 468 (Tex. App—Dallas 1994).

An analysis to determine whether the trial court had jurisdiction over Curadev's lawsuit "begins with its live pleadings." *Machete*, 483 S.W.3d at 272 (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)). "The ***plaintiff has the initial burden*** of alleging facts that ***affirmatively demonstrate*** the trial court's jurisdiction to hear the cause." *Id*. (emphasis added). Additionally, "[w]hen either party adduces evidence in connection with a jurisdictional plea, the trial court should consider that evidence in addition to challenges to the pleadings in confirming its jurisdiction." *Fraley v. Tex. A&M Univ. Sys.*, 664 S.W.3d 91, 97 (Tex. 2023). "Appellate review parallels that of summary judgment: a reviewing court should view the evidence in a light favorable to the

14

43565622v.7
43565622v.9

nonmovant, indulging reasonable inferences from that evidence in the nonmovant's favor." *Id.* If the jurisdictional evidence is undisputed or fails to raise a fact question, the suit must be dismissed for want of jurisdiction. *Miranda*, 133 S.W.3d at 226–28.

The Texas Supreme Court has recognized, ***with specific reference to Appellee UT Southwestern***, that the University, and ergo its officials, are presumptively immune from suit absent an applicable waiver. *See Univ. of Tex. Sw. Med. Ctr. at Dallas v. Estate of Arancibia ex rel. Vasquez-Arancibi*a, 324 S.W.3d 544, 546 (Tex. 2010) ("Absent a waiver, governmental entities, like [UT] Southwestern, are generally immune from suits for damages."). The Court has also "repeatedly confirmed . . . it is the Legislature's sole province to waive or abrogate sovereign immunity." *Hillman v. Nueces Cty.*, 579 S.W.3d 354, 363 (Tex. 2019) (quoting *Tex. Adjutant Gen's Office v. Ngakoue*, 403 S.W.3d 350, 353 (Tex. 2013)).

Thus, in this lawsuit against the State, the Court reviews de novo whether Appellants have plausibly and coherently articulated a claim falling within a clear constitutional or statutory waiver of the State's immunity. As set forth below, Curadev's pleadings fail to affirmatively establish a basis for waiver of sovereign immunity and that conclusion is only further reinforced by the undisputed evidence Curadev attached to its live pleading.

15

I. **The trial court correctly granted Appellees' Plea because Curadev failed to affirmatively establish the trial court's jurisdiction.**

    A. **UT Southwestern is an agency of the State of Texas protected by sovereign immunity.**

As acknowledged by Curadev in the Amended Petition, UT Southwestern is a "State agency" pursuant to the Texas Government Code and the Texas Education Code. *See* TEX. EDUC. CODE § 74.101 *et seq.*; TEX. GOV'T CODE §§ 572.002(10)(B) (state agencies include "a university system or an institution of higher education as defined by Section 61.003" of the Education Code), 441.101(3) (same). The definition is further expanded in section 61.003 of the Texas Education Code, where "medical and dental unit[s]" are included as "institution[s] of higher education," TEX. EDUC. CODE § 61.003(8), and UT Southwestern is defined as a "medical and dental unit," TEX. EDUC. CODE § 61.003(5). UT Southwestern thus qualifies as an "institution of higher education" and is, therefore, a State agency. *Id.*

As noted above, the Texas Supreme Court has recognized that UT Southwestern is entitled to the sovereign immunity of the State of Texas. *See Univ. of Tex. Sw. Med. Ctr. at Dallas*, 324 S.W.3d at 546 ("Absent a waiver, governmental entities, like [UT Southwestern], are generally immune from suits for damages."); *Gentilello v. Univ. of Tex. Sw. Health Sys.*, No. 05-13-00149-CV, 2014 WL 1225160, at *5 (Tex. App.—Dallas Mar. 24, 2014, pet. denied) (affirming trial court's grant of

UT Southwestern's plea to the jurisdiction based on sovereign immunity). In each of these cases, courts have held that UT Southwestern is a State agency and is, therefore, entitled to sovereign immunity. And, as explained below, the Legislature has not waived that immunity as to any of Curadev's claims.

**B.** **Sovereign immunity bars Curadev's takings claim because Curadev failed to plead a cognizable claim so as to fall within the waiver.**

"It is well settled that the Texas Constitution waives government immunity with respect to inverse-condemnation claims." *Jim Olive Photography v. Univ. of Houston Sys.*, 624 S.W.3d 764, 772 (Tex. 2021) (quoting *City of Houston v. Carlson*, 451 S.W.3d 828, 830 (Tex. 2014)) (internal quotation marks removed). Nevertheless, such a claim must be predicated upon a viable allegation of a taking. *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 476 (Tex. 2012). "In the absence of a properly pled takings claim, the state retains immunity." *Id.* Where a viable taking is not alleged, a court must sustain a plea to the jurisdiction. *See id.* at 491–92 (dismissing case for lack of jurisdiction after concluding plaintiff had not properly alleged a taking); *see also Machete*, 483 S.W.3d at 272 ("The plaintiff has the initial burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction to hear the cause.").

The Texas Supreme Court has outlined a three-part test to identify an actionable constitutional taking: (1) an intentional act by the State (2) that resulted

43565622v.7
43565622v.9

in a taking of the plaintiff's property (3) for public use. *Holland*, 221 S.W.3d at 643. A taking is the acquisition, damage, or destruction of property via physical or regulatory means. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 933 (Tex. 1998); *State v. Hale*, 146 S.W.2d 731, 736 (1941). And of course, "[a] person asserting a valid article I takings claim mu[st] show that he has a vested property interest" at the time of the alleged taking. *Mbogo v. City of Dallas*, No. 05-17-00879, 2018 WL 3198398, at *9 (Tex. App.—Dallas June 29, 2018, pet. denied).

The object of the alleged taking in this case, although vaguely alleged in an ever-shifting manner, is intellectual property. More specifically a trade secret that Appellants never really articulate in a definite manner—retreating between different abstracts as it suits their argument. The Texas Supreme Court has recognized that intellectual property may in some cases be the subject of a valid takings claim. *Jim Olive Photography v. Univ. of Houston Sys.*, 624 S.W.3d 764, 773 (Tex. 2021). And to be sure, that could conceptually inconclude an actual trade secret capable of definite description and valuation. However, due to the unique nature of intellectual property (as opposed to tangible property), the court must carefully consider the nature of the intellectual property at issue and the means by which it was allegedly taken. For instance, in *Jim Olive*, the Supreme Court found that allegations of misuse of a copyrighted material failed to state a viable takings claim. Given the nature and properties of a copyright, mere misuse of that intellectual property did not result in

43565622v.7
43565622v.9

total deprivation of the property owner's rights and, therefore, there was no actionable taking alleged. *Id.* at 777.

*Jim Olive* shows that a plaintiff attempting to assert a claim for taking of intellectual property must allege with sufficient clarity both the specific intellectual property at issue and how it was supposedly taken. Even indulging all reasonable inferences in favor of Curdev, the Amended Petition fails to identify: (1) an act undertaken by Appellees with sovereign rather than contractual intent; (2) an actual taking; or (3) any property capable of being taken.

### 1. Curadev did not plead that UT Southwestern "took" Curadev's supposed trade secret with the requisite intent.

The Court can affirm dismissal at the threshold because the Amended Petition makes a very simple point indisputably clear: this case arises out of a contractual relationship and Appellees' exercise of rights thereunder. It is therefore not actionable as a taking as a matter of law.

For all the drama Curadev attempts to conjure in this transaction, the honest truth is rather unremarkable. Appellees did not break into the vault and steal Curadev's special compound. Nor did they compel anyone to hand it over under power of state law.[4] The "secret" compound only came into Appellees' possession

---

[4] This distinguishes the present case from cases like *Ruckleshaus*, which recognize that in some cases, required disclosures accompanied by guarantees of confidentiality can give rise to taking of a trade secret.

19

via contractual agreement because a third party, Takeda, *affirmatively sought out Appellees and gave it to them* in order to collaborate on a study. (CR.545, ¶ 17) Appellees had no idea who Curadev even was until after Curadev volunteered that information in open discussion—outside the bounds of any confidentiality obligation and long after the Professors had already independently made their discovery that the unknown test compound "indeed binds an allosteric site." (CR.547, ¶ 25)

While the issues presented by that sequence of events are discussed further below, the fundamental issue is this: the Amended Petition says that Appellees exploited the amorphous "trade secrets" they obtained under the Research Agreement by: (1) publishing their research in *Nature*, (CR.548, ¶ 29), and (2) pursuing a patent. (CR.551-52, ¶¶ 38–40) Well, the Research Agreement affirmatively contemplated that Appellees would: (1) publish their findings, including confidential information, (CR.668), and (2) generate IP that the University would own and exploit. (CR.669)

Ergo, even assuming takeable IP exists and it was appropriated for public use, so far as it pertains to what Appellees discovered when studying the "secret" compound, any dispute about their ability to publish or patent IP based on those findings must be determined with reference to the terms of the governing contract. (*See id.*)

20

That places this case squarely under a long and unbroken line of authorities that declare unequivocally: when the State acts under a contract (or even arguably does so), it does not have the requisite intent to take property under its eminent domain power and, therefore, cannot be subject to liability under the Texas Constitution. *See Gen. Servs. Comm'n v. Little-Tex Insulation Co., Inc.*, 39 S.W.3d 591, 599 (Tex. 2001) (holding that the State acted "under colorable contractual rights" and not its eminent domain power when it refused to pay plaintiff for its labor and materials) (superseded in part on other grounds by statute as noted in *In re City of Galveston*, 622 S.W.3d 851 (Tex. 2021) (observing that Legislature restored immunity for certain contract claims through Tex. Gov't Code § 2260.007)); *Holland*, 221 S.W.3d at 644 (holding that, because the parties contracted for Holland's product and services under color of contract rights, the State lacked the intent to take Holland's patent by way of its eminent domain powers); *Lutz,* 149 S.W.3d at 760 (holding that the University's refusal to give plaintiff access to or possession of its software was an exercise of the University's contractual rights, not an intent to take plaintiff's property by eminent domain); *Dallas City Cmty. College Dist. v. Clear Channel Outdoor, Inc.*, No. 05-07-00701-CV, 2008 WL 3307085, at *3 (Tex. App.—Dallas July 31, 2008, pet. denied) ("In other words, the District was acting as any private party could, and not a sovereign, in exercising its right under the lease, and that its assertion of that right was not a taking."); *City of San Antonio*

43565622v.7
43565622v.9

*v. Polanco & Co., L.L.C.*, No. 04-07-00258-CV, 2007 WL 3171360, at *1, *6 (Tex. App.—San Antonio, Oct. 31, 2007) (holding that the City acted under color of its contractual rights when it terminated its contract with plaintiff and took possession of plaintiff's property after plaintiff failed to meet its contract obligations). The basic reason is obvious: "[w]hen," as here, "a party consents to the government's possession of its property, there can be no constitutional taking." *Smith*, 149 S.W.2d at 761.

For instance, when the State acquires property through its contractual capacity, there is no valid takings claim. *See, e.g.*, *Little-Tex Insulation Co.*, 39 S.W.3d at 598–99; *Bd. of Trs. of Galveston Wharves*, 297 S.W.3d at 489; *Polanco & Co., L.L.C.,* 2007 WL 3171360, at *1, *6. The appropriate inquiry is whether UT Southwestern was "acting ***as any private party could***, and not a sovereign" in exercising its rights under the contract, in which case its assertion of that right is not a taking. *See Bd. of Trs. of Galveston Wharves*, 297 S.W.3d at 490–91 (quoting *Dallas County Cmty. Coll. Dist.*, 2008 WL 3307085, at *3) (emphasis added) (internal quotation marks removed).

*State v. Holland*, 221 S.W.3d at 639, is instructive. In that case, the plaintiff "developed a cost-effective process to clean oil-contaminated bilge water," specifically a special kind of filter and its installation process. *Id.* at 641. The State, working on a project to abate coastal pollution, contracted with two intermediary

22

companies "to provide design services, components, installation and consulting services for the construction of three bilge water processing facilities," utilizing the plaintiff's intellectual property. *Id.* After the State refused to pay royalties for the plaintiff's after-acquired patents, he pressed a takings claim. *Id.* at 642.

As the Texas Supreme Court observed, the intellectual property at issue was "voluntarily provided" to the State by intermediaries "pursuant to contractual arrangements." *Id.* at 644. The State accepted that IP and exploited the benefits "under color of" those contracts and "not pursuant to its powers of eminent domain." *Id.* To the extent the intermediary companies granted rights they did not have to give, the plaintiff's claims, such as they were, "would be against" those companies, "not the State as a mere party to a contract with them." *Id.* The court accordingly found it error to deny the State's plea to the jurisdiction, because the state "[l]ack[ed] the requisite intent to take" the IP "under its eminent-domain powers." *Id.*

Curadev's allegations similarly establish that UT Southwestern did not forcefully or coercively take or destroy any trade-secret property through eminent domain, let alone with specific intent to do so. To the contrary, the alleged trade secrets were freely and voluntarily given to UT Southwestern pursuant the Research Agreement, and UT Southwestern acted under the color of that contract in publishing and exploiting its findings. (CR.545, ¶ 17) Curadev spends several paragraphs of the Amended Petition detailing the alleged terms of the Research Agreement, including

the scope of the permitted use of Curadev's information. (CR.545-46, ¶¶ 18–20) Curadev then complains that, upon termination of the Research Agreement, "[Appellees] failed to destroy the Company Material and failed to cease their investigation of Curadev's test compound." (CR.546, ¶ 23) Curadev's fixation on the terms of the contract, and the fact that all roads lead back to it, is the proof in the pudding. Taken together, Curadev claims at most that Appellees violated the terms of the Research Agreement.

Like the claimant in *Holland*, Curadev now seems to regret the contracts drawn up by its associate, complains they lacked the rights to allow the State to act as it did under the relevant contract, and contends that Appellees breached the contract. 221 S.W.3d at 644; App't Br. at 19. Perhaps it believes Takeda did not negotiate adequate protections for Curadev's trade secrets, or allowed for exploitation it ought not have. *See id.* But a breach of contract is not a taking, and Texas law provides other avenues for relief in those circumstances. *See* Tex. Gov't Code § 2260.001 *et seq.* And as the Texas Supreme Court made clear in *Holland*, remedy for grievances with a third-party licensor lies with Takeda and not the State—who was an innocent party to the Research Agreement and made its discoveries before it even knew who Curadev was. *See id.*; (CR.547, ¶¶ 24–25)

Thus, Curadev's takings claim is not—as it must be—that UT Southwestern exercised eminent domain powers but, instead, that UT Southwestern failed to act in

24

accordance with a contract. While UT Southwestern disagrees, as noted in the cases above, Curadev's claim that UT Southwestern misused Curadev's property by acting beyond the scope of a contract is not a cognizable takings claim. *See, e.g.*, *Little-Tex Insulation Co.*, 39 S.W.3d at 598–99; *Bd. of Trs. of Galveston Wharves*, 297 S.W.3d at 489; *Polanco & Co., L.L.C.,* 2007 WL 3171360, at *1, *6.

That conclusion is also supported by the relief Curadev seeks: (1) an injunction preventing Appellees from using Curadev's alleged trade secret information or any information derived therefrom, and (2) attorneys' fees. These remedies may be available in a breach-of-contract suit but cannot be recovered in a constitutional-takings claim. *See Scott v. Huntsville Indep. Sch. Dist.,* 487 S.W.2d 692, 693 (Tex. 1972) (holding trial courts may not enjoin government from exercising its article–1–section–17 condemnation rights); *City of San Antonio v. El Dorado Amusement Co.,* 195 S.W.3d 238, 249 (Tex. App.—San Antonio 2006, pet. denied) ("Article I, Section 17 of the Texas Constitution . . . does not authorize attorney's fees in a takings case."). Instead, the appropriate recovery under a constitutional-takings claim is "adequate compensation." TEX. CONST. art. I, § 17; *see Motiva Enters., LLC v. McCrabb,* 248 S.W.3d 211, 215–16 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (discussing compensation in takings claims). Curadev does not seek "adequate compensation," but instead advances an inverse-condemnation case in an apparent effort to recover traditional contract remedies.

43565622v.7
43565622v.9

Generally, parties may not recover contract damages that are "advanced under the rubric of a constitutional takings claim." *MBP Corp. v. Bd. of Trustees of Galveston Wharves*, 297 S.W.3d 483, 491 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

Without pleading that UT Southwestern acted with the requisite intent to deprive Curadev of, or destroy, any specific piece of property pursuant to its sovereign powers through eminent domain—as opposed to acting under contractual rights—Curadev has not established a viable takings claim, and UT Southwestern's sovereign immunity remains intact. *See, e.g.*, *Little-Tex Insulation Co.*, 39 S.W.3d at 598–99; *Bd. of Trs. of Galveston Wharves*, 297 S.W.3d at 489; *Polanco & Co., L.L.C.,* 2007 WL 3171360, at *1, *6.

**2.** ***Self* confirms the intent analysis is relevant.**

Curadev cites to *Tex. Dep't of Transp. v. Self*, 690 S.W.3d 12 (Tex. 2024) for the proposition that the Appellees' intent is irrelevant to the takings analysis. (Brief of Appellants at 17) Of course, when actually read, the decision does not effect such a sea change in takings law or overrule the Supreme Court's prior intent precedents. In *Self*, landowners brought claims against Texas Department of Transportation ("TxDOT") and its contractor, alleging inverse condemnation and negligence arising from the contractor's alleged removal of trees from a portion of the landowners' property. *Id*. at 17. The contractor was removing trees from the TxDOT right-of-way and mistakenly believed that the landowners' trees were located inside the right-of-

26

way. *Id*. TxDOT filed a plea to the jurisdiction, asserting sovereign immunity, and the trial court denied the plea. *Id*. at 18-19.

The Texas Supreme Court reversed in part, holding that there was no waiver of sovereign immunity for the landowners' negligence claim. *Id*. at 19-20. As for the inverse condemnation claim, the Court held that TxDOT's instruction to the contractor to cut down the trees at issue was a sufficient intentional act to maintain a constitutional claim for inverse condemnation. *Id*. at 26-27.

Here, Curadev advances an inverse condemnation theory based on a convoluted chain of events starting with research conducted pursuant to a valid collaboration research agreement and ending with Appellees' publication of research on a different, publicly disclosed compound. This is nothing like the simple, one-off act of cutting down trees. As such, Curadev's reliance on *Self* is mistaken.

Moreover, *Self* explicitly recognizes that when "the government acts on its rights under a contract" it is not exercising its "sovereign powers." *Id*. at 27. As detailed above, UT Southwestern was "acting as any private party could, and not a sovereign" in exercising its rights under the Research Agreement. Such acts cannot support a valid takings claim. *See Bd. of Trs. of Galveston Wharves*, 297 S.W.3d at 490–91.

43565622v.7
43565622v.9

Because Curadev's Amended Petition fails to allege a cognizable takings claim, the trial court correctly granted the Plea. *See Hearts Bluff Game Ranch*, 381 S.W.3d at 476.

Curadev also relies on *Brownlow v. State*, 251 S.W.3d 756 (Tex. App.—Hous. [14th Dist.] 2008), and curiously asserts that decision "controls here." App't Br. at 20. If read, it becomes quite apparent the case is utterly inapposite. The decision was based on the State's physical appropriation of several tons of dirt from the claimant's real estate. More specifically, the State "filed a Petition for Condemnation" in Brazoria County "to acquire an interest in 12.146 acres of land" owned by the claimant in order to build a retention pond as part of a highway project. *Id.* at 759. The parties later signed an agreed judgment granting an easement for the pond to the State—an interest in real property. *Id.* The State strayed into condemnation when it dug up and hauled off "87,544 cubic meters of dirt," the claimant's personal property, to use on another project. *Id.*

The case did not involve the issue of contractual vs. sovereign intent at all and that dichotomy is not discussed anywhere in the opinion. *See generally*, *id.* at 758–62. The decision turned on the fairly obvious proposition that the State paid for an interest in real property, then physically dug up and hauled of several tons of a soil (a personal commodity) that was never contemplated by the easement. *Id.* at 762.

28

In the present context, Takeda gave Appellees access and license to study a compound; publish their discoveries; and generate intellectual property derived from their study. (CR.668) *Brownlow* would come into play if, say, having been granted these intellectual property and access rights, UT Southwestern hauled off and occupied of a Takeda warehouse. But there are no such allegations, and *Brownlow* offers no insight into the issues presented here.

### 3. Curadev cannot cogently articulate a vested property right that was taken; its attempt to vacillate between the trade secrets that underpin its takings theory fails.

The fundamental flaws in Curadev's baseline theory bleed through in its inexplicable inability to articulate, in full voice, what its trade secrets actually are. Though Curadev asserts it "did identify" the property that was supposedly taken by UT Southwestern in three paragraphs of the Amended Petition (App't Br. at 11), in reality, Curadev's Amended Petition is a word salad of indecipherable and irreconcilable generalizations.

Curadev first points to "[t]he identity of the compound to be studied" by Appellees as a potential candidate. (App't Br. at 11; CR.545, ¶ 17) This flirts with what might be a coherent theory of a taking—the government forcibly or coercively obtains a secret compound and gives that compound itself to the public. But that is not what is alleged. And Appellants' "identity" theory cannot suffice itself for multiple reasons.

29

Most obviously, Curadev never alleges that Appellees actually disclosed the identity of the compound, let alone the compound itself, to begin with (because they never did). Indeed, the Amended Petition allows that Appellees "were not aware that Curadev was the inventor of the test compound, or of the chemical structure of the test compound or any of Curadev's other compounds" at the time they made their discovery.(CR.547, ¶ 24) And it was only, in Curadev's own words, at a November 2020 meeting that occurred *after* Appellees Bai and Zhang had made their discoveries and "revealed to Curadev" *the Professors' own findings*, that Curadev volunteered that information—outside the bounds of any contractual agreement with UT Southwestern. (CR.547, ¶ 25) Appellees could not have taken information they did nott know. And it is not alleged that they did anyway.

Moreover, the Amended Petition does not allege any factual material that plausibly supports an inference that the "identity of the compound" derives definite, independent economic value from being kept secret, so as to constitute a vested intellectual property right capable of being taken. *See* TEX. CIV. PRAC. & REM. CODE § 134A.002(6) (a "trade secret" must "derive[] independent economic value" from its secrecy).[5]

---

[5] This is one area where the law of trade secrets and takings diverge. For a taking to exist, "a party must have a property interest at the time of the alleged taking," and "[n]ot any property interest will do; that interest must have risen to the level of a vested right." *Tex. S. Univ. v. State St. Bank & Tr. Co.*, 212 S.W.3d 893, 903 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). "A *vested* property right is one that has been fixed by a court's final judgment or that has some definitive, rather than merely potential, existence." *Id.* (emphasis in original). "Potential" value can, in some

43565622v.7
43565622v.9

Because there is no case law to support Curadev's basic takings theory, Curadev now quietly stakes a claim in a new "trade secret"—the Appellees' discovery that a STING agonist could bind to the STING protein at "allosteric" the transmembrane site. (App't Br. at 11; CR.549, ¶ 31) But rote legal conclusions aside, the Amended Petition read together establishes that sometime prior to November 2020, the Professors had already "generated data showing that Curadev's test compound indeed bound to a unique allosteric transmembrane site on STING," again without any idea who Curadev was or the structure of any Curadev compounds, including the "secret" one.  (CR.547, ¶¶ 24–25) Curadev allegedly made a post hoc request to "postpone publication" of this data, but Appellees had no contractual obligations to Curadev, and indeed, had the affirmative contractual right to publish their discoveries under the Research Agreement. (*Id.*)

More to the point, however, Curadev **never plead** that it had a vested property interest in the Appellees' discovery, which is a prerequisite for a takings claim. *See Hallco Tex., Inc. v. McMullen Cnty.*, 221 S.W.3d 50, 56 (Tex. 2006) ("Absent a cognizable property interest, a claimant is not entitled to compensation under article I, section 17."); *see also* Statement of Facts § E; *see generally* Am. Petition.

---

cases, support a trade secret under trade secrets laws, but the Texas Constitution demands more. Public coffers cannot be opened to pay for hypothetical property supported by supposition. That is another reason why it is inappropriate for courts or claimants to shoehorn misappropriation claims into a takings framework.

43565622v.7
43565622v.9

Nor could they because, as discussed above, the Research Agreement and Texas law show the discovery does not belong to Curadev. The Research Agreement itself—which Curadev attached to its Amended Petition—reinforces the invalidity of Curadev's takings claims.[6]

The Research Agreement was entered into, between UT Southwestern and Takeda, with the express understanding that UT Southwestern is a research institute. (cr.663-76 (the Agreement)) And it provides UT Southwestern title to all discoveries from the research and the right to publish or otherwise publicly disclose the results of its research. (CR.663 ("You have the right to publish or otherwise publicly disclose Results."), CR.663 ("UT Southwestern shall be permitted to present or publish at their own choosing, methods and results of the Research Program under this Agreement . . ."), CR.669 ("For Purposes of this Agreement, an 'Invention(s)' is any invention or discovery, whether patentable or non-patentable, that is first conceived or reduced to practice in the course of performance of the Research Program under this Agreement. . . . title to all Inventions made jointly by UT

---

[6] The Texas Rules of Civil Procedure recognize that "[n]otes, accounts, bonds, mortgages, records, and all other written instruments . . . may be made a part of the pleadings by copies thereof, or the originals, being attached . . . *and shall be deemed a part thereof for all purposes*." Tex. R. Civ. P. 59 (emphasis added). "If a pleading attaches a legal instrument that forms the basis of the plaintiff's claims, *the instrument itself controls over an allegation about what the instrument says*." *Tex. Tech Univ. Sys. v. Martinez*, 691 S.W.3d 415, 433 (Tex. 2024) (Young, J., dissenting) (emphasis added); *see also Freiberg v. Magale*, 7 S.W. 684, 685–86 (Tex. 1888) ("Had it contradicted or been inconsistent with [the allegations], the exhibit, and not the pleading, would control.").


43565622v.7
43565622v.9

Southwestern and [Takeda] inventors shall reside jointly in UT Southwestern and [Takeda].").  Curadev, a total stranger to the agreement between UT Southwestern and Takeda, has no interest in intellectual property generated through that research collaboration.

In sum, Texas law and Curadev's exhibit—which Curadev repeatedly utilizes to set forth the parties' obligations—confirm that UT Southwestern was actually the title holder of the discovery, not Curadev. Accordingly, UT Southwestern cannot have taken property from Curadev that was not Curadev's to begin with. *See id.*

 Finally, Curadev points to paragraph 58, which is a boilerplate recitation in their Causes of Action section that points to a laundry list of undescribed items "including the test compound provided to UTSW by Takeda, C53, and a vague reference to "knowledge generated from Curadev's prior research." (App't Br. at 11; CR.557, ¶ 58)

The test compound provided by Takeda cannot form the basis of their takings claim for the reasons previously discussed—Appellees never knew what it was; it was never disclosed; its use was governed by the Research Agreement; and the compound itself is not plausibly alleged to have any definite value so as to constitute a vested property interest.

C53 is only involved insofar as it was publicly available, and thus not a trade secret, and the Professors applied their independently derived research to it.

33

43565622v.7
43565622v.9

The "knowledge" and Curadev's "prior research" are wholly undescribed. At best they relate to what Curadev thought what might be "likely" about the transmembrane region of STING and the potential value of STING if they were right. As noted above, the takings clause demands more than a misappropriation claim might; there must be a definite, vested property interest. Wishing and hoping about something that might be potentially valuable is not a right capable of being taken. And in any event, once again it must be mentioned that the Amended Complaint concedes the Professors made their finding without any idea who Curadev was or the chemical structure of any Curadev compounds—including the "secret" one. (CR.547, ¶ 24)

In its Brief, Curadev tries to clarify its pleading, asserting that the taking was "Appellees' use and exploitation of Curadev's physical test compound without Curadev's consent" and that "Appellees' use of such data, or disclosure of such data (or the information they couldn't have derived but for their unauthorized access to and use of such data) to other third parties" damaged Curadev. (App't Br. at 15-17) But even that characterization fails to answer the basic questions of what specifically was taken and how. Indeed, the Brief effectively concedes this point, arguing that disagreements over the "description of the scope of Curadev's trade secrets in this case" is a matter for trial. (App't Br. at 12). Not so. "The plaintiff has the initial burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction

34

to hear the cause." *Machete*, 483 S.W.3d at 272. It is hard to fathom who besides Curadev could identify what in the world was actually taken from them. And the Takings Clause demands specificity that the trade secrets laws might not. *See Tex. S. Univ.*, 212 S.W.3d at 903. Without clearly alleging the specific intellectual property at issue and how it was taken, there is no basis from the pleadings to conclude what vested property right is at issue or that the alleged taking completely deprived Curadev of its rights in the intellectual property and UT Southwestern thus retains its sovereign immunity. *See Jim Olive Photography*, 624 S.W.3d at 773–77; *Hearts Bluff Game Ranch*, 381 S.W.3d at 476.

But even if the Court were to go beyond indulging reasonable inferences and excuse Curadev of its obligation to allege facts affirmatively demonstrating jurisdiction, the pleadings at most identify only two items of intellectual property as the subject of the takings claim: (1) Curadev's "secret" test compound; or (2) Appellees' discovery that a STING agonist could bind to the STING protein at the transmembrane site. Curadev has not alleged an actionable taking claim as to any piece of intellectual property. And because Curadev has failed to plead a cognizable claim, UT Southwestern's sovereign immunity remains. *See Hearts Bluff Game Ranch*, 381 S.W.3d at 476.[7]

---

[7] The Amended Petition appears to only state a takings claim against UT Southwestern. To the extent Curadev aimed to allege takings claims against the Professors in their individual capacities—which, as discussed below, should not be possible—those claims must be dismissed,

43565622v.7
43565622v.9

## 4. Curadev has failed to show any basis in law to support its takings theory.

A governmental taking is a high bar. The Texas Supreme Court has recognized: "A compensable taking ***does not arise*** whenever state action adversely affects private property interests. Governments interfere with private property rights every day. Some of those intrusions are compensable; ***most are not***." *Jim Olive Photography v. Univ. of Houston Sys.*, 624 S.W.3d 764, 771 (Tex. 2021).

In a generous untangling of the legal theories posited in the Amended Petition, Curadev asserts trade secrets can be taken via two means: disclosure and misuse. Because Curadev never alleges that Appellees disclosed Curadev's "secret" compound, Curadev advances a novel theory of Appellees' supposed "misuse" of Curadev's test compound amounting to a taking. Curadev tries to connect Appellees' study of Curadev's compound to the Appellees' publication of research on an entirely different, publicly disclosed compound, which supposedly damaged Curadev. Here, the core of Curadev's takings claim appears to be that:

> **Appellees studied Curadev's secret compound pursuant to, and allegedly outside of, the Research Agreement**

---

as plaintiffs have no private cause of action for damages for alleged violations of constitutional rights by individual defendants in their individual capacities. *See Tex. Dep't of Family & Protective Services v. E.R.*, No. 13-07-00390-CV, 2009 WL 401622, at *4 (Tex. App.—Corpus Christi Feb. 19, 2009, no pet.) (affirming dismissal of claims for damages against individual defendants in their individual capacities for violation of the Texas Constitution); *see also City of Elsa v. M.A.L.,* 226 S.W.3d 390, 391 (Tex. 2007); *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 147 (Tex. 1995).

43565622v.7
43565622v.9



**Appellees gained knowledge about Curadev's secret compound**



**Appellees misused that knowledge to select an entirely different, and publicly disclosed, compound, C53**



**Appellees conducted research on the entirely different, publicly disclosed compound, C53**



**Appellees made their own discoverys and published their own research on the entirely different, publicly disclosed compound, C53**



**Supposed taking of Curadev's trade secret *in the secret compound***

Put another way, a third party allegedly granted Appellees permission to study

a secret compound of unknown origin, then publish and exploit what they learned;

Appellees learned something by looking at it; applied their knowledge to different,

43565622v.7
43565622v.9

publicly available information; and made their own discoveries. Whatever that convoluted theory may be under the law of tort or contracts, it is not a taking. And Curadev invites the Court down a dangerous path in this appeal—waiving immunity for "misappropriation" claims under the guise of Article I. The judiciary cannot create by fiat a cause of action that the Legislature has denied. *See Hillman*, 579 S.W.3d at 363.

Tellingly, Curadev has not cited a single case holding that such a chain of events constitutes a constitutional taking of any intellectual property, let alone a trade secret. Moreover, Curadev aims to obscure the attenuated theory that underpins its takings claim by intertwining it with case law about and discussion of trade secret ***disclosure***, which, again, it concedes did not occur as to the secret compound. (App't Br. at 23)

Nor, of course, can the government take what it creates itself—which is the real gist of what Curadev complains about by attacking the Professors' publication and exploitation of their own independent discoveries when studying the test compound. The recent decision by the Court of Federal Claims in *Vanda Pharmaceuticals, Inc. v. United States*, 174 Fed. Cl. 513 (Fed. Cl. 2025), observed as much. In *Vanda*, the plaintiff submitted its drugs for review in accordance with federal law, including a proposed "dissolution specification." *Id.* at 519–20. The FDA rejected the plaintiff's proposed dissolution specifications, and proposed an

43565622v.7
43565622v.9

alternative that the FDA generated itself. *Id.* The plaintiff accepted the FDA's alternative and the drugs went to market. Years later, the FDA disclosed the adopted dissolution specification to competitors making generic versions of the drug. *Id.* The plaintiff filed suit, alleging that "FDA officials disclosed the brand manufacturer's trade secret and confidential and proprietary information" by doing so. *Id.* The court dismissed those claims.

First, the court made the common sense observation that "[l]ogic dictates that the government cannot be credibly accused of taking information generated" by the government, and "[t]hough the FDA used information included in [the applications] to generate the alternative rates, the revised dissolution specifications cannot be said to be the 'end product' of [plaintiff]'s innovation or effort." *Id.* at 525. The court further held that "claimed trade secret and confidential and proprietary interest in the brand manufacturer's self-publicized impurities testing information involving the precise drug in issue (tasimelteon) fails to plead a viable Fifth Amendment takings claim." *Id.* at 529.

So too here, Curadev's fixation on Appellees' own discoveries applied to the publicly available C53 compound cannot form the basis of a trade secrets taking claim—for quite obvious reasons. *See id.*

In sum, Curadev's allegations do not amount to a cognizable taking. Nor does obfuscation or a retreat to "factual disputes" avail them. It is their burden to plead,

39

with facts, a plausible claim to relief that falls within a "clear and unambiguous" waiver of sovereign immunity. *Univ. of Tex. Med. Branch v. York*, 871 S.W.2d 175, 179 (Tex. 1994).[8]

### C. Cuardev failed to demonstrate a waiver of sovereign immunity for its conversion claim.

Texas courts have repeatedly recognized that the Legislature has not waived the government's sovereign immunity for claims of conversion (or any other intentional tort)—it is black-letter law. *See, e.g.*, *Hoffman v. Moore*, No. 13-18-00617-CV, 2020 Tex. App. LEXIS 3405, at *7 (Tex. App.—Corpus Christi Apr. 23, 2020, no pet.) ("[T]he TTCA does not waive immunity for intentional torts, such as fraud and conversion."); *Nkansah v. Univ. of Tex. at Arlington*, No. 02-10-00322-CV, 2011 Tex. App. LEXIS 8208, at *8 (Tex. App.—Fort Worth Oct. 13, 2011, pet. denied) (holding that "claims against UTA for breach of fiduciary duty, negligence, misrepresentation, fraud, forgery, conversion, negligent misrepresentation, abuse of process, and gross negligence are barred by sovereign immunity").

---

[8] Appellees do not allow for a moment that there is any merit to Curadev's claims and deny them completely. UT Southwestern is a premier academic medical center that, guided by Texas law and University of Texas policies, performs research at the highest academic and ethical levels. It is home to six Nobel prize winners.

But to the extent Appellants feel slighted and invite emotion to sway judgment because sovereign immunity deprives them of the "right to even seek a remedy in a court of law," well, that is indeed the entire purpose of the doctrine. And it reflects a foundational judgment in Texas statehood that the Legislature is solely positioned to make the policy determinations as to when State resources should be diverted to defending suspect cases like the one at bar. *Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 121 (Tex. 2015).

43565622v.7
43565622v.9

Moreover, even setting aside the numerous cases that have held conversion claims are barred by immunity as a matter of law, Curadev's conversion claim here clearly does not fit within the waiver of immunity afforded by the Texas Tort Claims Act. "The TTCA . . . does not provide for recovery of property damage or loss except in those instances in which such loss results from the operation and use of a motor-driven vehicle or motor-driven equipment." *Retzlaff v. Tex. Dep't of Crim. Justice*, 135 S.W.3d 731, 743 (Tex. App.—Houston [1st Dist.] 2003, no pet.); *City of San Antonio v. Winkenhower*, 875 S.W.2d 388, 390 (Tex. App.—San Antonio 1994, writ denied) ("The Texas Tort Claims Act distinctly reflects that recovery for property damage alone may arise in only one instance—when damages are proximately caused by the operation or use of motor-driven vehicles or motor-driven equipment."). Curadev has not and cannot allege that the use of a motor vehicle or motor-driven equipment caused any alleged loss.

As such, sovereign immunity bars Curadev's claim for conversion against UT Southwestern. The trial court appropriately dismissed this claim for lack subject matter jurisdiction.

## D. Curadev has not established that the Legislature clearly and unambiguously waived sovereign immunity for claims of trade secret misappropriation.

Curadev also alleges a claim for misappropriation of trade secrets under the Texas Uniform Trade Secrets Act ("TUTSA"), (CR.557-58, ¶¶ 57–61), which is

41

located at Chapter 134A of the Texas Civil Practice and Remedies Code. "[T]he Legislature's intent to waive immunity must be clear and unambiguous." *Garcia*, 253 S.W.3d at 655. There is no clear and unambiguous waiver of sovereign immunity in the text of TUTSA, nor has Curadev pleaded any other Legislative basis for a waiver. As such, Curadev's TUTSA claim against UT Southwestern is barred by sovereign immunity, and the trial court properly dismissed this claim.

### E. Texas law rejects supposed common-law bases for waiver of sovereign immunity.

Curadev identifies two supposed common-law bases for waiver of sovereign immunity: (1) the joint enterprise theory; and (2) waiver by conduct. Neither is valid.

#### 1. Texas courts consistently refuse to recognize a waiver-by-conduct exception.

Ignoring numerous, more recent cases from the Texas Supreme Court, Curadev attempts to rely on a dicta footnote in a 1997 Texas Supreme Court opinion to topple the longstanding and repeatedly reaffirmed proposition that it is the Legislature's sole prerogative to waive sovereign immunity, noting "[t]here ***may*** be other circumstances where the State may waive its immunity by conduct" in support of its alleged waiver-by-conduct exception. (Brief of Appellants at 23 (citing *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 408 n.1 (Tex. 1997)) (emphasis added)). For one, that footnote simply observed the obvious: the court was deciding the issue before it, namely whether the State waives immunity every time it enters into a

42

43565622v.7
43565622v.9

contract, and not issuing an advisory opinion on topics not before it. *See id.* More importantly, since 1997, the Texas Supreme Court has recognized that waiver of sovereign immunity falls exclusively within the ***Legislature's*** providence, not that of the judiciary. *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002) ("[I]t is the Legislature's sole province to waive or abrogate sovereign immunity.").

*Hearts Bluff Game Ranch, Inc. v. State*, cited by Curadev, likewise does not support a waiver-by-conduct exception to sovereign immunity for trade-secret misappropriation or conversion claims. 381 S.W.3d 468 (Tex. 2012). Cuardev's brief even recognizes as much, *Hearts Bluff* concerned constitutional takings claims—not waiver by conduct for non-constitutional tort claims. *Id*. at 476. In that case, the Supreme Court analyzed whether the plaintiff properly pled a takings claim. *Id*. at 478. There was no waiver by conduct, it was a takings case. *Hearts Bluff* has no bearing on this issue.

The Texas Supreme Court has consistently refused to recognize a waiver-by-conduct exception against governmental entities. *See Oncor Elec. Delivery Co. NTU, LLC v. Wilbarger Cnty. Appraisal Dist.*, 691 S.W.3d 890, 907 (Tex. 2024) ("sovereign immunity must be waived by the Legislature rather than by a party's conduct"); *Sharyland Water Supply Corp. v. City of Alton,* 354 S.W.3d 407, 414 (Tex. 2011) (holding that allowing a waiver-by-conduct exception thwarts the

43565622v.7
43565622v.9

Legislature's balance of competing private and public interests); *Tex. A & M Univ. Sys. v. Koseoglu,* 233 S.W.3d 835, 840 (Tex. 2007) (rejecting waiver-by-conduct argument).

Texas appellate courts have similarly refused to establish a waiver-by-conduct exception to sovereign immunity that the Texas Supreme Court has repeatedly refused to endorse. *TXU Energy Retail Co. L.L.C. v. Fort Bend Indep. Sch. Dist.*, 472 S.W.3d 462, 467 (Tex. App.—Dallas 2015, no pet.) ("The supreme court and other appellate courts, including this Court, have consistently refused to recognize a waiver-by-conduct exception in breach of contract suits against governmental entities."); *Gentilello v. Univ. of Tex. Sw. Health Sys.,* No. 05–13–00149–CV, 2014 WL 1225160, at *5 (Tex. App.—Dallas Mar. 24, 2014, pet. denied) (mem. op.) ("We decline to establish a waiver-by-conduct exception to sovereign immunity for any cause of action, whether based on a breach of contract or not."); *Univ. of N. Tex. v. City of Denton,* 348 S.W.3d 44, 55 n. 15 (Tex. App.—Fort Worth 2011, no pet.).

This Court must likewise abide by the Texas Supreme Court's binding precedent and reject Curadev's request to establish a waiver-by-conduct exception here. *See City of McKinney v. Hank's Rest. Grp., L.P.,* 412 S.W.3d 102, 114 (Tex.

43565622v.7
43565622v.9

App.—Dallas 2013, no pet.) ("Any judicial abrogation of governmental immunity should be undertaken by the supreme court.").[9]

Moreover, even if Curadev's theory could be entertained, it lacks any foundation and is incapable of reasoned application. Curadev has not even plausibly alleged that Appellees breached any duty. And even if Curadev had made such allegations, its theory, such as it is, would effectively transform any alleged breach of any contract (even one to which the claimant was not a party) or violation of the trade secret laws into a waiver by conduct—swallowing the doctrine of sovereign immunity entirely.

### 2. The joint enterprise theory is not an independent basis for waiver of immunity.

Curadev alleges that UT Southwestern is estopped from relying on a sovereign immunity defense because UT Southwestern entered into a joint enterprise with Takeda and/or Novartis. (CR.546, ¶ 21; CR.553, ¶ 45; CR.560, ¶ 71) That argument completely misunderstands Texas law and ignores an extremely basic point: the joint waiver theory only applies if the alleged wrongful conduct of the would be joint-enterpriser falls within the Texas Tort Claims Act or another statutory waiver of immunity. That is, a claimant must first plead and prove that the third-party conduct

---

[9] Curadev's argument here is further proof that this is a contract dispute masquerading as a takings claim—everything relates back to the "Research Agreement with Takeda" and a purported failure to "adher[e] to those limitations." Br. at 22.

43565622v.7
43565622v.9

at issue would fall within a statutory waiver of immunity; and then establish that a joint enterprise between the third-party actor and State existed under the common law elements of that doctrine. *Tex. Dep't of Transp. v. Able,* 35 S.W.3d 608 (Tex. 2000) ("TxDOT can only be liable if the joint enterprise finding brings the liability within the waiver of sovereign immunity language in the Tort Claims Act").

Curadev contends that the Texas Supreme Court has recognized joint enterprise as an independent basis for waiver of governmental immunity, citing *Texas Department of Transportation v. Able,* 35 S.W.3d 608 (Tex. 2000). (App't Br. at 23) Curadev's reliance on *Able* is misplaced.

*Able* was a personal injury lawsuit filed by the surviving relatives and estate of Margaret Able, who was killed when her automobile was struck head-on by a vehicle driving the wrong direction in the same HOV lane. *Able,* 35 S.W.3d at 610. The plaintiffs sued the Texas Department of Transportation ("TxDOT") and the Houston Metropolitan Transit Authority ("Metro"), among others, for negligence and gross negligence. *See id.* The jury found Metro—but not TxDOT—negligent, and likewise found that TxDOT had entered into a joint enterprise with Metro. *Id.* The trial court utilized the joint enterprise theory to impute Metro's wrongful acts to TxDOT. *Id.* TxDOT appealed, arguing there was no evidence to support finding a joint enterprise and sovereign immunity had not been waived. *See id.* at 610–11.

46

The Texas Supreme Court found there was sufficient evidence to support the jury's finding of a joint enterprise between TxDOT and Metro. *Id*. at 614–16. As for the issue of sovereign immunity, the Court noted that the TTCA waived sovereign immunity for "personal injury and death so caused by a condition . . . of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." *Id*. at 612–13 (citing TEX. CIV. PRAC. & REM. CODE § 101.021(2)). And in the context of private parties, "the theory of joint enterprise is to make each party thereto the agent of the other and thereby to hold each responsible for the negligent act of the other." *Id*. *at 613* Thus, the Court concluded there would be waiver "if the joint enterprise finding brings the liability within the waiver of sovereign immunity language in the Tort Claims Act." *Id*.

In *Able*, the joint enterprise made Metro an agent of TxDOT, and thus TxDOT was "responsible for the negligent act of the other," (i.e., Metro). *Id*. Because there would have been a waiver of sovereign immunity under §101.021(2) had TxDOT personally committed the negligent act, the Texas Supreme Court found that the joint enterprise "[brought] the liability" within the waiver of sovereign immunity in the TTCA. *Id*.

Thus, the *Able* court utilized joint enterprise not as an ***independent*** basis for waiver but, rather, to impute an act of a private party to a governmental unit and avoid sovereign immunity where that private party's act would fall within an

47

established waiver of immunity if committed by the governmental unit itself. Texas appellate courts have consistently applied *Able* in this way. *See, e.g.*, *Doe v. City of Fort Worth*, 646 S.W.3d 889, 907 (Tex. App.—Fort Worth 2022, no pet.) ("Thus, assuming the City's relationship with PetSmart constituted a joint enterprise, it could be liable if PetSmart's actions as the City's agent in the joint enterprise 'br[ought] the liability within the waiver of sovereign immunity language in the [TTCA].'"); *Tex. Dep't of Transp. v. Olivares*, 316 S.W.3d 89, 106 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("Joint enterprise is not an independent basis for waiver of immunity, but may result in waiver of immunity under the TTCA where a governmental entity would be liable for another's negligence if the governmental entity were a private person."); *Seureau v. ExxonMobil Corp.*, 274 S.W.3d 206, 219 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("[W]e hold that, absent legislative consent to suit, the common-law theory of joint enterprise, by itself, does not waive a governmental entity's immunity from suit."). This reading "comports with the well-known principle that the Legislature—through statute or resolution—waives immunity from suit, and not the courts through the application of common-law theories." *Seureau*, 274 S.W.3d at 219 (citing *IT–Davy,* 74 S.W.3d at 854).

In short, joint enterprise has only been applied where a third-party actor's conduct falls within the Texas Tort Claims Act—i.e., the third party's conduct must

43565622v.7
43565622v.9

have involved "use of publicly owned automobiles, premises defects, and injuries arising out of conditions or use of property." *Able*, 35 s.W.3d at 611.

There are multiple flaws with Curadev's allegations of joint enterprise. First, Curadev's only factual assertions to support its joint enterprise allegations are that Appellees entered into contractual agreements with Takeda and Novartis "to exploit and develop STING agonists." (CR.546, ¶ 21; CR. 553, ¶ 45) A contractual relationship or shared business purpose does not create a joint enterprise. *See Able*, 35 S.W.3d at 613 ("[t]he elements which are essential to a joint enterprise are commonly stated to be four: (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control"); *Blackburn v. Columbia Med. Ctr. of Arlington Subsidiary, L.P.*, 58 S.W.3d 263, 276 (Tex. App.—Fort Worth 2001, pet. denied) ("more is required for a community of pecuniary interest than a generally shared business purpose"). Curadev's allegations of joint enterprise fail on this basis alone.

Additionally, Curadev's allegations are conceptually inconsistent with a joint-enterprise based waiver of immunity. Curadev utterly failed to allege that either Novartis or Takeda (the would-be agents) took any negligent or wrongful actions that (1) should be imputed to Appellees **and** (2) "br[ought] the liability within the

49

waiver of sovereign immunity language in the [TTCA]" or other clear, unambiguous statutory waiver of immunity by the Legislature. *Doe*, 646 S.W.3d at 907. There is no motor vehicle, bodily injury, or real property involved. Without bad acts and advance agreement by the third-party, would-be agent, to commit acts that fall within an independent statutory waiver of immunity, there is no immunity-waiving act to be imputed to UT Southwestern, and the joint enterprise theory cannot apply at even a conceptual level.

Accordingly, Curadev's allegations of a joint enterprise are insufficient to meet Curadev's burden of affirmatively showing waiver of sovereign immunity.

## F.   The Texas Tort Claims Act election-of-remedies provision mandates dismissal of the Professors.

Curadev initially asserted two tort claims against the Professors along with UT Southwestern: misappropriation of trade secrets, (CR.20, ¶ 46; CR. 558, ¶ 61) and conversion (CR.22, ¶ 53; CR.559, ¶ 65). After the fact, when it was brought to their attention their claims were all barred, they attempted to add allegations that the Professors were acting *ultra vires*. (CR.560-61, ¶ 73). While all of those claims lack the necessary factual allegations, they can also be dismissed forthwith by operation of the Texas Tort Claims Act.

A government employee may be sued in her individual or official capacity, or in both capacities. *Nueces Cnty. v. Ferguson*, 97 S.W.3d 205, 213 (Tex. App.— Corpus Christi 2002, no pet.). An employee sued in her official capacity generally

43565622v.7
43565622v.9

enjoys the same sovereign immunity afforded to the government. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 380 (Tex. 2009).

"When," as here, "a petition fails to specify the capacity in which a person is sued," courts "look at the course of proceedings to determine the nature of the liability the plaintiff seeks to impose." *Ferguson*, 97 S.W.3d at 215. Courts "must ascertain the true nature of [the plaintiff's] claims and not exalt form over substance" when reviewing the pleadings to make this determination. *Zellers v. Cortez*, No. 13-09-00596-CV, 2010 WL 1839280, at *3 (Tex. App.—Corpus Christi May 6, 2010, no pet.). As noted above, Curadevs' allegations fixate upon Bai and Zhang's acts as researchers and employees at UT Southwestern, and a central pillar of their, admittedly convoluted, theory of liability is a contract between Takeda and UT Southwestern.

But the Court need not even delve into that calculus. To avoid wasteful gamesmanship and artful pleading, the Texas Legislature enacted an election-of-remedies provision in the Texas Tort Claims Act ("TTCA"). TEX. CIV. PRAC. & REM. CODE § 101.106. The TTCA's election-of-remedies provision "governs all suits against a governmental unit." *Garcia*, 253 S.W.3d at 654. The Texas Supreme Court describes this provision as "requiring a plaintiff to make an irrevocable election at the time suit is filed between suing the governmental unit under the Tort Claims Act or proceeding against the employee alone." *Id.* at 657. The Supreme Court has

43565622v.7
43565622v.9

warned that "a plaintiff must proceed cautiously before filing suit" because the decision to sue a governmental unit, an employee of that unit, or both has "irrevocable consequences." *Id.*

The TTCA's "election of remedies" provision provides in relevant part:

(a)     The filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and ***immediately and forever bars any suit or recovery by the plaintiff against any individual employee*** of the governmental unit ***regarding the same subject matter***.

(e)     If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.

(f)     If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

TEX. CIV. PRAC. & REM. CODE § 101.106 (emphasis added). The Legislature meant what it said: electing to sue the State along with its employees "forever bars" any other claims for recovery against individual employees "regarding the same subject matter." *Id.*

The Texas Supreme Court has held that "the [TTCA's] election scheme governs ***all suits*** against a governmental unit." *Mission Consol. Indep. Sch. Dist. v.*

52

*Garcia*, 253 S.W.3d 653, 654 (Tex. 2008) (emphasis added). Again, a plaintiff files a suit "under this chapter," if it asserts *any tort claim* against a governmental entity. *Garcia*, 253 S.W.3d at 657 ("Because the [TTCA] is the only, albeit limited, avenue for common-law recovery against the government, all tort theories alleged against a governmental unit, whether it is sued alone or together with its employees, are assumed to be 'under [the TTCA]' for purposes of section 101.106."). The Supreme Court has reaffirmed this holding repeatedly over the years. *See, e.g.*, *Franka v. Velasquez*, 332 S.W.3d 367, 379 (Tex. 2011). Curadev, like many before it, cannot escape the limitations of the TTCA or Texas law through artful pleading. *See Johnson v. Boehnke*, No. 03-19-00200-CV, 2019 WL 4458797, at *3 (Tex. App.— Austin Sept. 18, 2019, no pet.) ("[E]ven though Johnson did not assert in his pleadings that his tort claims against the District were brought 'under' the TCA, they presumptively are brought 'under' the act for the purposes of the irrevocable-election statute . . . Therefore, Johnson's prior irrevocable election to sue the District bars his later . . . claims against the employees, and the trial court properly determined that it did not have jurisdiction over those claims.") (internal citations removed).

The purpose of the TTCA's election-of-remedies provision is to require a plaintiff suing the government or its employees to articulate a consistent theory— from the outset—about: (1) whom it is suing and in what capacity; and (2) why sovereign immunity does not apply. As explained below, the election-of-remedies

provision was designed to prevent exactly what Curadev attempts to do here, which is to utilize amended pleadings and evasive alternative theories to manufacture subject-matter jurisdiction.

First, some history is instructive. The Legislature originally enacted the election-of-remedies provision in 1985 to protect government employees and prevent plaintiffs from "avoid[ing] the Act's damages cap or other strictures by suing governmental employees." *Mission Consol.*, 253 S.W.3d at 656. The original provision provided government employees protection when claims against the governmental unit were "reduced to judgment or settled" but did nothing "to prevent a plaintiff from pursuing alternative theories against both the employee and the governmental unit through trial or other final resolution." *Id*. In the Legislature's view, this outcome was incompatible with the purpose of sovereign immunity.

In 2003, as part of a comprehensive effort to reform the tort system, the Legislature amended the TTCA's election-of-remedies provision. *Id*. As a result of that amendment (and as quoted above), the election-of-remedies provision now provides that the "***filing*** of a suit" against a governmental unit constitutes an "irrevocable election" that "immediately and forever bars any suit or recovery" against an employee of that governmental unit. TEX. CIV. PRAC. & REM. CODE § 101.106(a) (emphasis added).

54

As the Texas Supreme Court has explained, the purpose of this statute is to "force a plaintiff to decide *at the outset* whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit is vicariously liable." *Id*. at 657 (emphasis added). This forced choice was intended to prohibit plaintiffs from pleading in the alternative or using amendments to avoid sovereign immunity:

> [B]y forcing plaintiffs to make an irrevocable election at the time suit is filed, the Legislature intended to reduce the delay and expense associated with allowing plaintiffs to plead alternatively that the governmental unit is liable because its employee acted within the scope of his or her authority but, if not, that the employee acted independently and is individually liable.

*Id.* The Supreme Court has since warned that a plaintiff "must proceed cautiously before filing suit and carefully consider whether to seek relief from the governmental unit or from the employee individually" because the decision has "***irrevocable consequences***." *Id*. (emphasis added).

Through the Original Petition, Curadev filed a suit "against an employee of a governmental unit based on conduct within the general scope of that employee's employment." *See* TEX. CIV. PRAC. & REM. CODE § 101.106(f). Thus, section 101.106(e) requires immediate dismissal of the Professors. Curadev's belated attempt to allege that the Professors acted *ultra vires* and outside the course and scope of their employment cannot alter that outcome.

55

### 1. Curadev cannot plead around its irrevocable election to sue both UT Southwestern and its employees.

The TTCA's election-of-remedies provision is "intended to protect governmental employees by favoring their early dismissal when a claim regarding the same subject matter is also made against the governmental employer." *Mission Consol.*, 253 S.W.3d at 657 (citing TEX. CIV. PRAC. & REM. CODE § 101.106(e), (f)). Section 101.106(e) applies to suits where a plaintiff sues both a governmental unit and any of its employees. It provides:

> If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall *immediately* be dismissed *on the filing of a motion by the governmental unit.*

TEX. CIV. PRAC. & REM. CODE § 101.106(e). Here, Curadev's Original Petition asserted claims against both UT Southwestern and the Professors based on the same subject matter—meaning subsection (e) requires dismissal of the Professors "immediately" upon "filing" of UT Southwestern's motion. *See, e.g., Texas Bay Cherry Hill, L.P. v. City of Fort Worth,* 257 S.W.3d 379, 401 (Tex. App.—Fort Worth 2008, no pet.) (holding that even assertion by plaintiff that it sued government employee in individual capacity does not bar dismissal of employee under section 101.106 when suit against governmental entity and employee involves same subject matter); *see also City of Corpus Christi v. Eby*, No. 13-09-00205-CV, 2011 WL 1437002, at *5 (Tex. App.—Corpus Christi Apr. 14, 2011, no pet.) (same).

56

For example, in *Texas Bay Cherry Hill*, Cherry Hill, the owner of an apartment complex, filed suit against the City of Fort Worth and its councilmember, Haskin, alleging the City and Haskin "conspired to diminish the apartment complex's value by disparaging it and tortiously interfered with its business relationships with existing and prospective tenants." 257 S.W.3d at 387. The City filed a plea to the jurisdiction and motion to dismiss Haskin pursuant to section 101.106, and the trial dismissed all claims against Haskin. *Id*. Cherry Hill alleged the trial court erred by dismissing Haskin because Haskin was not a City employee and, regardless, Cherry Hill sued Haskin in her individual capacity. *Id*. at 399. The court of appeals rejected these arguments and affirmed the trial court's dismissal of Haskin "because whether a plaintiff sues a governmental employee in the employee's official or individual capacity is irrelevant under the applicable subsections of section 101.106." *Id*.

Similarly, in *Eby*, Eby filed suit against the City of Corpus Christi and Vesely, a City employee, based on Vesely's alleged intentional torts. 2011 WL 1437002 at *5. The City moved for dismissal of claims against Vesely pursuant to § 101.106 (e), but the trial court denied the City's motion. *Id*. On appeal, the court found Eby filed suit against the City and Vesely based upon the same subject matter: Vesely's alleged intentional torts. *Id*. at *6. The court accordingly concluded the suit fell under subsection (e) and "[e]ven an assertion by a plaintiff that it sued a government employee in his individual capacity and not his official capacity does not bar

57

dismissal of the employee under subsection (e), when, as here, the suit against the governmental entity and the employee involve the same subject matter." *Id*. Recognizing that "[s]ubsection (e) imposes a mandatory duty to dismiss upon a governmental unit's filing of the appropriate motion" in these circumstances, the court held that the trial court was required to dismiss the claims against Vesely and erred by failing to do so. *Id*. at *6.

Dismissal was likewise required here. The Original Petition asserted claims against UT Southwestern and the Professors based on the same conduct: the Professors allegedly taking, converting, and misappropriating Curadev's trade secrets. UT Southwestern subsequently moved for the Professors' dismissal pursuant to section 101.106(e). (CR.8-24) Because the Original Petition asserted claims against UT Southwestern and the Professors based on the same subject matter, section 101.106(e) required dismissal of the Professors "immediately" upon "the filing" of UT Southwestern's original motion, regardless of whether Curadve alleges the Professors acted in their individual or official capacities. *Texas Bay Cherry Hill*, 257 S.W.3d at 401; *Eby*, 2011 WL 1437002 at *5.

In a clear attempt to avoid the straightforward outcome required by section 101.106(e), Curadev changed its allegations, asserting in its Amended Petition that the Professors acted *ultra vires* and outside the scope of their employment with UT Southwestern. (*See* CR.554, ¶ 48; CR.560-61, ¶ 73) But in

43565622v.7
43565622v.9

2017, in another case involving an academic health university, the Texas Supreme Court held that an amended pleading ***cannot undo*** a plaintiff's original irrevocable election under the TTCA:

> ***Rios made an irrevocable election to pursue a vicarious-liability theory against the Center by alleging in his original petition state-law tort claims against both the Center and the Doctors that were premised on the Doctors' being Center employees***. Defendants' motion to dismiss the Doctors under subsection (e) of the Act's election-of-remedies provision confirmed the Doctors' status as employees and accrued their right to dismissal from the lawsuit. ***Rios could not avoid this result by amending his petition to drop the tort claims against the Center***; nor did defendants' amended motion to dismiss vitiate its already-triggered statutory right to dismissal of the Doctors. ***<u>The statute's plain text mandates these conclusions</u>***.

*Univ. of Tex. Health Sci. Ctr. of Hous. v. Rios*, 542 S.W.3d 530, 538–39 (Tex. 2017) (emphasis added).

Similarly, in *Molina v. Alvarado*, 463 S.W.3d 867, 871 (Tex. 2015), the Texas Supreme Court held:

> If at the time Alvarado filed suit he possessed insufficient information to determine whether Molina was acting within the scope of his employment, the prudent choice would have been to sue Molina, and await a factual resolution of that question. . . Because Alvarado did not do so, he essentially chose his defendant before being required to do so by the election-of-remedies provision. ***That choice is still an irrevocable election under section 101.106***.

43565622v.7
43565622v.9

Indeed, Texas courts have recognized that by suing both the governmental unit and its employee, a plaintiff "***foreclose[s] the possibility*** of suing only the employees in their individual capacities." *Kirk v. Plano Indep. Sch. Dist.*, No. 03-15-00211-CV, 2016 WL 462742, at \*2 (Tex. App.—Austin Feb. 3, 2016, no pet.) (emphasis added); *Carter v. Diamond URS Huntsville, LLC*, No. CIV.A. H-14-2776, 2015 WL 3629793, at \*12 (S.D. Tex. June 10, 2015) ("The Court would point out that when an employee acts ultra vires, i.e., outside the scope of his authority . . . ***section 101.106's election of remedies provision still applies***") (emphasis added).

Accordingly, Curadev's tort claims against the Professors are clearly barred by Section 101.106(e). And their attempt to inject *ultra vires* issues against the Professors after making an initial election to pursue only tort remedies against them and UT Southwestern changed nothing. Dismissal of the Professors pursuant to section 101.106(e) was required and mandatory upon filing of UT Southwestern's motion. (*See* CR.1114-43) The trial court accordingly did not err by dismissing the Professors from the suit.

### G. Curadev fails to allege a viable *ultra vires* claim.

Putting aside that Curadev made an irrevocable election and cannot pursue any claims against the Professors, their attempted use of the *ultra vires* doctrine fundamentally misunderstands the doctrine, and they have not plausibly alleged any *ultra vires* action anyway. Foremost, *ultra vires* is not a doctrine that waives an

43565622v.7
43565622v.9

employee's immunity from tort liability as the Amended Petition seemed to imply—

although Curadev now appears to retreat from that implication. [10]  An *ultra vires*

allegation is a claim against an official in his or her official capacity, seeking

prospective injunctive relief to control State action.  As such, "an *ultra vires* suit

must lie against the allegedly responsible government actor in his official capacity."

*Hall v. McRaven*, 508 S.W.3d 232, 240 (Tex. 2017) (quotations omitted).  There are

"two general means of proving an *ultra vires* claim: (1) an action without legal

authority or (2) failure to "perform a purely ministerial act."  *Id.* at 241.

Curadev invokes but fails to justify or understand the first category.  "To assert

an ultra vires claim" based on a lack of lawful authority, claimants must "plead and

prove two elements: '(1) authority giving the official some (but not absolute)

discretion to act and (2) conduct outside of that authority.'"  Pidgeon v. Turner, 625

S.W.3d 583, 600 (Tex. App.—Houston [14th Dist.] 2021, no pet.) (quoting *Hall*,

508 S.W.3d at 239). The Texas Supreme Court has held unequivocally that "failing

to comply with a contract does not give rise to an ultra vires claim," *City of Houston*

*v. Houston Mun. Employees Pension Sys.*, 549 S.W.3d 566, 576 (Tex. 2018), yet that

is precisely what Curadev fixates upon in their Amended Petition as discussed

---

[10] In their Brief, Curadev appears to concede that the *ultra vires* doctrine is not a waiver of immunity from tort liability, and allows only prospective injunctive relief.  (App't Br. at 26)  It does not, as the Amended Petition implies, render the Professors amenable to tort liability. (CR.560-61, ¶ 73).

43565622v.7
43565622v.9

above. More specifically they contend that the Professors "circumvented the confidentiality restrictions" in the contract between UTSW and Takeda, and also "continued their research" beyond "termination of the Agreement," (CR.554, ¶ 48), later exploiting IP beyond (allegedly) what that agreement allowed. While untrue, even assuming these allegations were valid, acting beyond contractual authorization does not amount to *ultra vires* action. *See City of Hous.*, 549 S.W.3d at 576.

Moreover, "'[u]ltra vires claims depend on the scope of the state official's authority,' not the quality of the official's decisions." *Honors Academy, Inc. v. Tex. Educ. Agency*, 555 S.W.3d 54, 68 (Tex. 2018) (quoting *Hall*, 508 S.W.3d at 234. In short, "it is not an ultra vires act for an official to make an erroneous decision within the authority granted." *Id.* And "there is a critical distinction between alleged acts that are truly outside of the official's decision-making authority (which are not shielded by sovereign immunity) and alleged acts that the official merely 'got it wrong' while acting within his authority (which are shielded)." *JRJ Pusok Holdings, LLC v. State, No. 14-22-00559-CV, 2023 WL 8939318*, at *6 (Tex. App.—Houston [14th Dist.] Dec. 28, 2023), opinion supplemented on denial of reh'g, No. 14-22-00559-CV, 2024 WL 1625299 (Tex. App.—Houston [14th Dist.] Apr. 16, 2024, pet. filed).

Curadevs' claims fall within the latter category. While they clearly disagree with the Professors' course of research and decision to publish in this instance

62

(which were in any event completely legitimate), research and publication clearly fall within the authority of Professors at UT Southwestern. The passing and formulaic statement that the Professors were not authorized "to take Curadev's property by unlawful means" adds nothing to the calculus. If such allegations were all the law required to state an *ultra vires* claim, by definition every tort asserted against the State would fall within the exception because every tort claim implies that some state actor acted unlawfully.[11]

Finally, the Amended Petition seeks primarily monetary damages for alleged intentional torts that have already occurred—yet "ultra vires claimants are only entitled to prospective relief" and cannot obtain damages. *City of Hous.*, 549 S.W.3d at 576. "If the injury has already occurred and the only plausible remedy is monetary damages, an *ultra vires* claim will not lie." *Id.*; *Williams v. Valdez*, No. 05-18-00213-CV, 2020 WL 2897181, at *3 (Tex. App.—Dallas June 3, 2020, no pet.) ("we reject Williams's premise, because despite his description of his claim, he has not asserted an ultra vires claim and instead has asserted an intentional tort claim for which he seeks monetary damages from Valdez"). An *ultra vires* theory cannot

---

[11] The Amended Complaint further alleges that the Professors completed an *ultra vires* constitutional "taking." (CR.560-61, ¶ 73) That is, of course, nonsensical. A taking is by definition the State's "exercise of its sovereign authority . . . to take, damage, or destroy private property for a public use, subject, of course, to the right of the owner thereof to adequate compensation." *Tex. Highway Dep't v. Weber*, 147 Tex. 628, 630, 219 S.W.2d 70, 71 (1949). The Professors cannot, themselves, take anything. A taking is explicitly a sovereign act by the State, and by definition cannot be committed *ultra vires*—the Amended Petition stumbles over its own absurdity.

63

support any of Curadev's claims against the Professors for alleged intentional torts causing damages. The haphazard insertion of conclusory "*ultra vires*" language into the Amended Complaint accomplishes nothing.

### H. The Associate Judge properly heard Appellees' plea, and Appellants did not timely object or seek de novo review from the District Court.

Appellees finally attack the trial court's judgment by purported technicality—asserting that the very capable Associate Judge could not hear Appellants' plea. Br. at 35. While they do not appear to assert that this is grounds to reverse the judgment, *see id.* (". . . to the extent"), the argument can be dismissed forthwith.

First, as Appellants acknowledge in their brief, the Government Code dictates that: "[a] party *must* file an objection to an associate judge hearing a trial on the merits or presiding at a jury trial not later than the 10th day after *the date the party receives notice* that the associate judge will hear the trial." TEX. GOV'T CODE § 54A.106 (emphasis added).

Appellees' plea was originally noticed on October 4, and set for hearing before the Associate Judge on November 20, 2024. (Supp.CR.77). Appellants objected, and requested the hearing be set before the District Judge. (Supp.CR.81) After further discussion, a new hearing was noticed on October 29, 2024, this time set for December 4, 2024, again before the Associate Judge. (Supp.CR.83)

43565622v.7
43565622v.9

Appellants did not object to the renewed setting before the Associate Judge until November 18, 2024—twenty days "after the date [Appellants] receive[d] notice that the associate judge" would hear the plea. TEX. GOV'T CODE § 54A.106; Supp.CR.91-92. In short, that objection came ten days too late under the plain text of the statute. *See id.*; TEX. GOV'T CODE § 54A.106.

Putting that aside, Curadev' requested relief cannot be squared with their course of conduct below or the scheme established by the Government Code, which provides two avenues for a losing party in this situation: request a de novo hearing with the referring court, or appeal. There is nothing wrong with either choice but it is an election. Here, Curadev prays that if "any portion of this dispute is remanded it should proceed before duly elected Judge Williams." (App't Br. at 35)[12] But Appellants abjured their opportunity to have Judge Williams review the plea to the jurisdiction by foregoing their right to a de novo hearing before her. *See* TEX. GOV'T CODE § 54A.115. They opted instead to appeal, refusing the very relief they now request. To be sure, a direct appeal is also contemplated by the Government Code, but as an alternative to novo review: "failure to request a de novo hearing before the referring court or a party's waiver" of that right "does not deprive the party of the

---

[12] This request also appears premature and unsupported. It amounts to prospective mandamus relief instructing the District Court how to handle its docket in the event of hypothetical events that might occur in the future. If a new hearing is set before the Associate Judge on a matter that falls within the Government Code, Appellants will need to

43565622v.7
43565622v.9

right to appeal or request other relief from a court of appeals . . ." TEX. GOV'T CODE § 54.116A. By their election to appeal, Curadev waived their right to have Judge Williams evaluate the plea. *See id.*

But in the end, any invitation for the Court blind to itself to jurisdictional defects would lack basic legal footing. "Subject matter jurisdiction is 'essential to a court's power to decide a case,'" and as all are aware, lack of jurisdiction could have been raised for the first time on appeal in this court. *City of Hous. v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013) (quoting *Bland Inep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000). It cannot be conferred by consent, waiver, or technicality, and "all courts bear the affirmative obligation 'to ascertain that subject matter jurisdiction exists regardless of whether the parties have questioned it.'" *Id.* (quoting *In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 306 (Tex. 2010)).

Whether this case, as pled, falls unambiguously within a clear waiver of sovereign immunity prescribed by the Constitution or Legislature, and thus within the jurisdiction of the judiciary to entertain at any level, has been presented to the Court and must be decided. *See id.*; *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 95, 118 S. Ct. 1003, 1013, 140 L. Ed. 2d 210 (1998) (observing that an appellate court has "a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review") (quoting *Mitchell v. Maurer*, 293 U.S. 237, 244 (1934)).

66

## PRAYER

For these reasons, Appellees respectfully pray that the Court affirm the trial court's order granting Appellees' Plea to the Jurisdiction and grant Appellees such other relief to which they are entitled.

Respectfully submitted,

/s/ *David Schlottman*
**Nathaniel St. Clair, II**
  State Bar No. 24071564
  nstclair@jw.com
**David Schlottman**
  State Bar No. 24083807
  dschlottman@jw.com
**Demi Williams Coles**
  State Bar No. 24084101
  dcoles@jw.com
**Hailey Oestreich**
  State Bar No. 24116627
  hoestreich@jw.com
**Jackson Walker LLP**
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
Telephone: (214) 953-6000
Facsimile: (214) 661-6690

*Attorneys for Appellees The University of Texas Southwestern Medical Center, Dr. Xiaochen Bai, and Dr. Xuewu Zhang*

43565622v.7
43565622v.9

## CERTIFICATE OF COMPLIANCE

Relying on the word count function of the computer software used to prepare this document, the undersigned certifies that the Brief of Appellee contains 14,637 words (excluding the sections excepted under TEX. R. APP. P. 9.4(i)(1)) and was typed in 14-point font with footnotes in 12-point font.

/s/ *David Schlottman*
**David Schlottman**

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing motion was served via electronic service in accordance with TEX. R. APP. P. 9.5 upon the following counsel of record for Appellants on this 24th, day of February, 2025:

David P. Whittlesey (david.whittlesey@aoshearman.com)
Trey Hebert (trey.hebert@aoshearman.com)
Allen Overy Shearman Sterling US LLP
300 West 6th Street, Ste. 2250
Austin, TX 78701

Jacob Daniel Fields (jacob.fields@aoshearman.com)
Allen Overy Shearman Sterling US LLP
The Link at Uptown
2601 Olive St., 17th Floor
Dallas, TX 75201

/s/ *Hailey Oestreich*
**Hailey Oestreich**

43565622v.7
43565622v.9

# Tab 1

| | | |
|---|---|---|
| CURADEV PHARMA PVT. LTD., and CURADEV PHARMA LIMITED, | § § § § § § § § § § § § § | IN THE DISTRICT COURT OF |
| *Plaintiffs*, | | |
| v. | | DALLAS COUNTY, TEXAS |
| THE UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, DR. XIAOCHEN BAI, AND DR. XUEWU ZHANG, *Defendants*. | | 101ST JUDICIAL DISTRICT |

## ORDER GRANTING DEFENDANTS' PLEA TO THE JURISDICTION

On this day, the Court considered Defendants The University of Texas Southwestern Medical Center's ("UT Southwestern"), Dr. Xiaochen Bai's ("Bai"), and Dr. Xuewu Zhang's ("Zhang," and collectively with UT Southwestern and Bai, the "Defendants") Plea to the Jurisdiction ("Plea") (filed July 30, 2024) in the above-entitled and numbered action. After considering the Plea, the responses, and the arguments of counsel, the Court is of the opinion that the Plea should be and hereby is GRANTED.

It is therefore ORDERED that Plaintiffs Curadev Pharma Pvt. Ltd. and Curadev Pharma Limited take nothing on their claims, and all claims asserted against Defendants are dismissed with prejudice.

SO ORDERED.

SIGNED 1        12/16/2024

_____
JUDGE PRESIDING

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Kim Sparks on behalf of Hailey Oestreich
Bar No. 24116627
ksparks@jw.com
Envelope ID: 90917167
Filing Code Description: Non-Signed Proposed Order/Judgment
Filing Description: PROPOSED ORDER GRANTING DEFS' PLEA TO THE JURISDICTION
Status as of 8/15/2024 9:48 AM CST

Associated Case Party: THE UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Nathaniel St Clair | | nstclair@jw.com | 8/14/2024 5:00:37 PM | SENT |
| David Schlottman | | dschlottman@jw.com | 8/14/2024 5:00:37 PM | SENT |
| Pam Collins | | pcollins@jw.com | 8/14/2024 5:00:37 PM | SENT |
| Demi Williams | | dswilliams@jw.com | 8/14/2024 5:00:37 PM | SENT |
| Hailey Oestreich | | hoestreich@jw.com | 8/14/2024 5:00:37 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Olin Hebert | 24097819 | trey.hebert@aoshearman.com | 8/14/2024 5:00:37 PM | SENT |
| David Whittlesey | 791920 | david.whittlesey@aoshearman.com | 8/14/2024 5:00:37 PM | SENT |
| Jacob Fields | | jacob.fields@aoshearman.com | 8/14/2024 5:00:37 PM | SENT |
| Ashley CegielskiDuncum | | ashley.duncum@aoshearman.com | 8/14/2024 5:00:37 PM | SENT |
| Amanda Adame | | amanda.adame@aoshearman.com | 8/14/2024 5:00:37 PM | SENT |
| DAVID WHITTLESEY | | AMANDA.ADAME@SHEARMAN.COM | 8/14/2024 5:00:37 PM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Hailey Oestreich on behalf of David Schlottman
Bar No. 24083807
hoestreich@jw.com
Envelope ID: 97745066
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Brief of Appellees Requesting Oral Argument
Status as of 2/25/2025 7:16 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Nathaniel St Clair | | nstclair@jw.com | 2/24/2025 11:03:01 PM | SENT |
| David Schlottman | | dschlottman@jw.com | 2/24/2025 11:03:01 PM | SENT |
| Olin Hebert | 24097819 | trey.hebert@aoshearman.com | 2/24/2025 11:03:01 PM | SENT |
| David Whittlesey | 791920 | david.whittlesey@aoshearman.com | 2/24/2025 11:03:01 PM | SENT |
| Jacob Fields | 24115134 | jacob.fields@shearman.com | 2/24/2025 11:03:01 PM | SENT |
| Hailey Oestreich | | hoestreich@jw.com | 2/24/2025 11:03:01 PM | SENT |
| Demi Williams | | dswilliams@jw.com | 2/24/2025 11:03:01 PM | SENT |